THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD J. CROWE, Defendant-Appellant.

Fourth District   No. 4—91—0730

Opinion filed August 3, 1992.

Mark T. Petty, of Arcola, for appellant.

Richard L. Broch, State's Attorney, of Tuscola (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On September 12, 1988, a two-count information was filed in the circuit court of Douglas County charging defendant Donald J. Crowe with the offense of reckless homicide (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)). Count II was dismissed for lack of probable cause after a preliminary hearing. On April 19, 1989, the court allowed a defense motion to dismiss count I on double jeopardy grounds. Upon appeal to

this court, we reversed and remanded for further proceedings. (*People v. Crowe* (1990), 195 Ill. App. 3d 212, 552 N.E.2d 5.) On remand, defendant renewed his motion for dismissal on double jeopardy grounds. That motion was denied. After a trial by jury on September 30, 1991, the court entered judgment on a verdict finding defendant guilty and sentenced defendant to probation for 30 months conditioned upon spending four months in imprisonment and certain other requirements.

Defendant has appealed, asserting two grounds for reversal without remandment and two for merely granting a new trial. He contends that (1) failure of the evidence to show that he caused the death of the victim named in the charge, and (2) constitutional double jeopardy principles entitle him to reversal without remandment. In the alternative, he requests a new trial because the court gave an erroneous instruction and because of rulings in regard to evidence concerning blood tests given to him and the victim. We hold defendant is entitled to a new trial because the court gave a faulty instruction which deprived him of due process. We find no other basis for reversal.

The evidence at trial showed that on August 26, 1988, at approximately 2 a.m. defendant was the driver of one of two vehicles which collided on Illinois Route 45 near Arcola. The driver of the other vehicle was killed. Count I of the information charged that defendant had (1) operated his vehicle at a speed unreasonable and improper under the traffic conditions, (2) crossed over the highway centerline when it was not safe to do so, and (3) caused the death of Kelly J. Keigley, all while under the influence of alcohol. Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a).

At trial, the treating physician at the hospital where defendant was taken following the accident testified that defendant's blood-alcohol concentration was "0.12 percent." Debra Wilkes, a medical technician at the same hospital, testified that she had drawn the blood sample to measure the alcohol concentration in defendant's blood and had run the test. The coroner and a deputy sheriff each identified the victim at the scene as Kelly J. Keigley on the basis of her driver's license. The deputy sheriff testified that when he talked to the defendant both at the hospital and at the scene of the accident, he smelled the distinct odor of an alcoholic beverage on defendant's breath and observed defendant's eyes to be bloodshot and his speech slurred. The deputy testified to an opinion that at that time, defendant was under the influence of alcohol.

The defense called several witnesses who testified that they had seen defendant drinking and playing pool in the Knight's Lounge in Mattoon from about 9:10 p.m. on August 25, 1988, until 1 a.m. on August 26, 1988. All those witnesses testified that they believed the defendant was sober when he left the bar. Defendant testified in his own behalf. He stated that after he left the bar he stopped at a friend's house for approximately 30 minutes before picking up a sandwich and milk. He then drove north on Route 45 out of Mattoon heading toward his home in Arthur. Defendant testified that the last thing he remembered seeing was the city lights of Arcola. He had no recollection of anything from that point until he felt the impact of the collision and pulled himself out of the window of his car.

■ We summarily reject defendant's assertions in regard to the existence of a variance between the name of the person alleged to be the victim and the person who was killed in the collision. A death certificate lists the name of the victim as Kelly J. Wilson. However, a driver's license found on the victim was issued to Kelly J. Keigley and listed the same date of birth and social security number as that stated on the death certificate in regard to Kelly J. Wilson. Most importantly, the coroner testified that the person killed in the collision had the same face and physical characteristics as shown in the photograph on the driver's license issued to "Kelly Keigley." The proof was fully sufficient to justify a determination by the jury that the person killed in the collision was the Kelly Keigley listed as the victim in the charge.

Defendant's double jeopardy claim arises from three traffic charges which were filed against him in the circuit court of Douglas County on August 26, 1988. One of these charges was for the offense of driving under the influence of intoxicating liquor (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501). On defendant's motion, on March 29, 1989, that charge was dismissed for a violation of defendant's right to a speedy trial. Defendant then moved to have all pending charges against him dismissed, relying on section 3—3 of the Criminal Code of 1961 (Code) which stated, in relevant part:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection

(c), if they are based on the same act." Ill. Rev. Stat. 1987, ch. 38, pars. 3—3(a), (b).

The circuit court allowed defendant's motion to dismiss, noting that the victim had died at the scene and the prosecution would have known of the existence of a reckless homicide offense at the time the traffic charges were filed. The circuit court also relied upon *People v. Rodgers* (1982), 106 Ill. App. 3d 741, 435 N.E.2d 963, and *People v. Williams* (1981), 94 Ill. App. 3d 241, 418 N.E.2d 840, where charges filed after earlier charges arising from the same alleged conduct were held to be barred based on the statutory compulsory-joinder principle when the earlier charge had been dismissed for denial of a speedy trial.

On appeal to this court in *Crowe*, we recognized the apparent analogy to *Rodgers* and *Williams* but also explained that here, unlike in those cases, the original charges had been initiated by the relatively informal procedure of the use of uniform citation and complaint forms. In *People v. Jackson* (1987), 118 Ill. 2d 179, 514 N.E.2d 983, the supreme court held that the compulsory-joinder provision of section 3—3 of the Code is not applicable to prior charges brought on a uniform citation and complaint form (see 107 Ill. 2d R. 552). The *Jackson* court noted that section 3—3 of the Code had been enacted prior to the establishment in this State of a unified court system with the circuit court as the sole court of original jurisdiction in each county. The court further explained that section 3—3 of the Code refers to prosecutions in the same court and the General Assembly, at time of enactment, would not have envisioned a citation where informal traffic complaints would be filed in a court having felony jurisdiction.

In *Crowe*, defendant also argued that the reckless homicide charge was also barred by constitutional double jeopardy principles. We held that claim was refuted (1) by the *Jackson* court's analysis of the relationship between the prior charges and the charges then being brought, and (2) because, here, the prior charge was dismissed for lack of a speedy trial without the defendant having been placed in jeopardy. On the latter point, we cited *People v. Luallen* (1989), 188 Ill. App. 3d 862, 544 N.E.2d 1206.

In the instant appeal defendant maintains that the decision of the United States Supreme Court in *Grady v. Corbin* (1990), 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084, has changed the law in regard to the application of constitutional double jeopardy principles in a case of this nature from that which was set forth in *Jackson*. *Grady* involved a factual situation similar to that here in all material aspects

but one. There, the accused was involved in an automobile collision where a motorist was killed. He then pleaded guilty in a town court to two traffic tickets charging driving while intoxicated and failure to keep to the right of the median. Subsequently he was indicted in a county court for involuntary homicide offenses similar to the reckless homicide charged here.

In *Grady*, a bill of particulars showed that the prosecution intended to prove elements of the offenses for which the accused had been indicted by proof of the conduct inherent in the traffic offenses to which the accused had pleaded guilty in the town court. The *Grady* court held that prosecution of the offenses set forth in the indictment was barred. In *Jackson*, the court had held that, except for a situation not present here or there, an earlier prosecution bars a subsequent one only when the statutes from which the charges arise do not each require proof of an element the other does not. (*Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180.) This holding in *Jackson* was relied upon partly by us in *Crowe*. The State admits and the supreme court agreed in *People v. Stefan* (1992), 146 Ill. 2d 324, 586 N.E.2d 1239, that this aspect of *Jackson* has been overruled.

■ The crucial difference between the situation in this case and that in *Grady* is that in *Grady* the defendant suffered jeopardy when he pleaded guilty to the prior traffic charges—while here the defendant was not placed in jeopardy when the charges against him were dismissed for lack of a speedy trial. We relied, in part, upon that factor in *Crowe* when we pointed out that the question of defendant's guilt or innocence had never been submitted to a trier of fact, citing *Luallen*. *Crowe*, 195 Ill. App. 3d at 219, 552 N.E.2d at 10.

In *Luallen* after a jury was impaneled and upon a defense motion, the circuit court not only declared a mistrial but also dismissed the charge because the State had violated the rights of that accused by unintentionally losing evidence. A few days later, the court recognized that it should not have dismissed the charge and reinstated it. This court held that the question of the guilt of the defendant had not been submitted to the trier of fact and the reinstatement of the charge did not create double jeopardy. *Luallen* relied on *United States v. Scott* (1978), 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187, where during the course of trial, the charges against that defendant were dismissed for preindictment delay and the trial court denied reinstatement. The United States Supreme Court held that no double jeopardy violation had occurred when that defendant was reindicted as that defendant had requested the trial court to abort the proceedings before guilt or

innocence had been determined. *Scott*, 437 U.S. at 98-99, 57 L. Ed. 2d at 79, 98 S. Ct. at 2198.

In *Scott*, dismissal of a charge at the request of the defense, after jeopardy had attached but before determination of the issue of guilt, did not prevent reindictment on constitutional double jeopardy grounds. Here, the traffic charges against defendant were dismissed at his request not only before the trier of fact had passed on the question of his guilt but before jeopardy had attached. We hold that constitutional double jeopardy principles did not prevent trial of defendant on the reckless charge because the conduct used to prove that offense had never been offered in any other proceeding arising from the same occurrence for which defendant had been placed in jeopardy.

We now turn to the question of the propriety of instructions given to the jury, and which we find constitute reversible error. Section 9—3(a) of the Code defines reckless homicide as an unintentional killing of an individual by reckless acts committed while driving a motor vehicle in a manner likely to cause death or great bodily harm (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)). The reversible error in instructing the jury arose from an attempt to explain to the jury the significance of subsections (b) and (c) of section 9—3, which state:

"(b) In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be prima facie evidence of a reckless act.

(c) For the purposes of this Section, a person shall be considered to be under the influence of alcohol or other drugs while:

1. The alcohol concentration in such person's blood or breath is 0.10 or more based on the definition of blood and breath units in section 11—501.2 of The Illinois Vehicle Code;

2. Under the influence of alcohol to a degree which renders such person incapable of safely driving." Ill. Rev. Stat. 1987, ch. 38, pars. 9—3(b), (c)(1), (c)(2).

Over defense objection, the jury was given the following instruction offered by the State:

"Being under the influence of alcohol at the time of the alleged violation shall be prima facie [*sic*] evidence of a reckless act. A person shall be considered to be under the influence of alcohol if the alcohol concentration of such persons [*sic*] blood is .10 percent or more by weight of alcohol."

The jury was also given an instruction tendered by the defendant, which stated:

"*Prima facie* evidence of recklessness may be rebutted by showing that although a person was under the influence of alcohol when he performed the acts causing the death of another, the acts were not performed recklessly."

Defendant's objections at trial to the foregoing State's instruction was that (1) the instruction was not from Illinois Pattern Jury Instructions, Criminal (IPI); (2) use of the phrase ".10 percent or more by weight of alcohol" is not proper in instructions in a reckless homicide case; and (3) more importantly, reference in a jury instruction to "*prima facie* evidence" is improper as that phrase is only significant to a court in determining whether evidence is of sufficient weight to be considered by a trier of fact.

On appeal, defendant attempts to broaden the third issue by maintaining that the use of the phrase "*prima facie* evidence," when taken together with the use of the word "considered" in the second sentence of the State's instruction, could easily confuse the jury as to the burden of proof and indicate to it that the defendant had some burden of proof to negate evidence of his guilt. The claim of the impropriety of the use of the phrase "*prima facie* evidence" was set forth in defendant's post-trial motion.

We note that the State's instruction of which defendant complains is taken verbatim from an instruction approved under similar circumstances by the Fifth District Appellate Court in *People v. Haas* (1990), 203 Ill. App. 3d 779, 795, 560 N.E.2d 1365, 1376, *appeal denied* (1990), 135 Ill. 2d 561. A similar instruction, however, was deemed erroneous by the Third District Appellate Court in *People v. Atteberry* (1991), 213 Ill. App. 3d 851, 572 N.E.2d 434, unless the phrase "*prima facie* evidence" was defined for the jury. The *Atteberry* opinion was rendered only a few months before the trial in this case and may not have been called to the court's attention. This court has never passed upon the question of the propriety of this type of instruction before. Under these circumstances, even if *Atteberry* had been called to the circuit court's attention, that court was at liberty to choose which of the two districts to follow. *Garcia v. Hynes & Howes Real Estate, Inc.* (1975), 29 Ill. App. 3d 479, 331 N.E.2d 634.

■ We are not bound by the decisions of other appellate districts. We conclude that the phrase "*prima facie* evidence" should not be used even when defined. We hold that its undefined use, together with the use of the word "considered" in the second sentence of the State's instruction, created a condition whereby reasonable jurors could have interpreted the instruction to shift the burden of proof to the defendant as to an aspect of the case. (*Sandstrom v. Montana*

(1979), 442 U.S. 510, 514, 61 L. Ed. 2d 39, 45, 99 S. Ct. 2450, 2454.) When this happens, due process rights of the accused are violated and the error created is not waived by failure to preserve the issue in the trial court. *People v. Thompson* (1967), 36 Ill. 2d 332, 223 N.E.2d 97.

We are quick to add that the trial court's instructing the jury about *"prima facie* evidence" would have been error even if it had not been used in conjunction with the word "considered." For the reasons that follow, we hold that the trial court should never instruct a jury regarding the phrase *"prima facie* evidence."

We agree with the *Atteberry* analysis that a reasonable juror could have thought that the phrase *"prima facie* evidence" was sufficiently ambiguous such that a reasonable juror could feel that the evidence required defendant to rebut an element of proof of guilt and thereby violated his due process right as set forth in *Sandstrom.*

The *Atteberry* opinion cited with approval the decision of the Fifth District Appellate Court in *People v. Gray* (1981), 99 Ill. App. 3d 851, 426 N.E.2d 290. That court reversed a conviction for deceptive practices because of an error in instructing the jury. At that time, section 17—1(B)(d) of the Code stated:

> "Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered is *prima facie* evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d).)

The circuit court gave an issues instruction incorporating that language.

Language in the *Gray* opinion by the late Justice John M. Karns is instructive:

> "The objectionable portion of this language is the use of the term 'prima facie.' 'Prima facie' is used in two senses and is therefore ambiguous and often misleading. It is sometimes used as the equivalent of a presumption which here would require or permit the jury to conclude that defendant knew he had insufficient funds on deposit in the bank at the time the checks were issued and, therefore, had the requisite intent to defraud from proof that insufficient funds were, in fact, not on deposit. At the minimum, it would shift the burden of producing evidence, and perhaps the burden of persuasion, onto the defendant. On the other hand it is also used to denote evidence sufficient, as a matter of law, to warrant submission of the case to the fact[ ]finder or, more simply, the making of a submissible case. See 9 Wigmore, Evidence §2494 (Chadbourn rev. 1981).

Although we believe the better view to be that the use of 'prima facie' in section 17—1(B)(d) of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)) is instructive to the court in its determination of submissibility (see McCormick, Evidence §342 and n. 26, at 803 (2d ed. 1972)), it is unnecessary to decide that question inasmuch as the use of the term, in an issues instruction, in either of the two senses is objectionable. As stated, the use of 'prima facie' in determining submissibility involves the use of a legal term to aid the court. Such a term cannot be properly used to instruct a jury, particularly absent an explanation as to its meaning. The use of the term as the equivalent to a presumption has constitutional ramifications. If a reasonable juror could have interpreted 'prima facie' as a presumption to shift the burden of production or the burden of persuasion, or to have been conclusive, then there is a conflict with the overriding presumption of innocence afforded the accused in a criminal case. Thus, the failure to instruct the jury as to the nature of the presumption would result in the deprivation of a fair trial. See *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450, and cases cited therein." *Gray*, 99 Ill. App. 3d at 854-55, 426 N.E.2d at 292.

Here, defendant was permitted to have the jury instructed that *"[p]rima facie* evidence of recklessness may be rebutted" by showing that although the accused may have been intoxicated, he was not reckless. However, in a criminal case the qualification of a presumption by language stating it may be rebutted is not enough to make the presumption merely permissive rather than mandatory. (*County Court v. Allen* (1979), 442 U.S. 140, 157, 60 L. Ed. 2d 777, 792, 99 S. Ct. 2213, 2225.) Thus, the instruction here was not sufficiently clarified by an instruction defining the phrase *"prima facie* evidence," even if it could have been rendered proper by such a clarifying instruction. Moreover, because of the due process issue raised by the State's instruction in question, the fact that defendant tendered an instruction attempting to clarify the phrase *"prima facie* evidence" does not create a waiver of the error in the State's instruction using the phrase.

We agree with the *Gray* court that the phrase *"prima facie* evidence" has a preferred use as describing whether evidence is strong enough for consideration by a trier of fact and that any attempt to clarify the phrase in an instruction to mean something else is undesirable. The phrase concerns a legal determination to be made by the court and should not be used in an instruction submitted to a jury.

■ The use of the word "considered" in the second sentence of the State's instruction compounds the confusion which the instruction creates and the likelihood a reasonable juror could have erroneously decided that a mandatory presumption was created. The instruction told the jury that a person is "considered" under the influence of alcohol upon a showing of a certain level of alcohol in that person's blood. The verb "consider" has sometimes been used to mean "to think about carefully; to think of especially with regard to taking some action." (Webster's Ninth New Collegiate Dictionary 279-80 (1990).) However, "consider" also means "to come to judge or classify." (Webster's Ninth New Collegiate Dictionary 280 (1990).) The definition "to *** classify" seems to be most consistent with the context in which the word considered is used in the questioned instruction and that usage would give rise to a mandatory presumption.

■ Defendant also maintains on appeal that the use of the phrase ".10 percent or more by weight of alcohol" in the State's instruction was error. Section 9—3(c)(1) of the Code, which sets forth the statutory inference of intoxication arising from the amount of alcohol in a subject's blood or breath, is spoken of as being "0.10 or more based on the definition of blood and breath units in Section 11—501.2 of The Illinois Vehicle Code." (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(c)(1).) Section 11—501.2(5) of the Illinois Vehicle Code states: "[a]lcohol concentration shall mean either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(5).) Here, the measurement introduced into evidence was stated to be for defendant's blood and the reading was "0.12 percent." Thus the language of the witnesses setting forth the alcohol reading and the instruction both used the concept of percentages and the jury could not have been confused on this subject.

While some confusion may exist as a legal question, courts have used the words ".10" and ".10 percent" interchangeably in describing the measurement creating the inference of intoxication. (See *People v. Hester* (1989), 131 Ill. 2d 91, 97-98, 544 N.E.2d 797, 800-01; *People v. Ziltz* (1983), 98 Ill. 2d 38, 42-43, 455 N.E.2d 70, 72; *People v. Bodoh* (1990), 200 Ill. App. 3d 415, 430, 558 N.E.2d 178, 185.) The use of the phrase ".10 percent or more by weight of alcohol" did not render the State's instruction erroneous.

Defendant's first claim of error in regard to blood tests concerns those given him at a hospital shortly after the collision. He admits that the results of the blood test given him were not privileged but contends that, over his objection, the State was given access to additional information. He then asserts that the physician and nurse who

testified gave no foundation for their testimony and also testified to privileged prejudicial matters. No showing is made that any information gained from the records which was prejudicial to defendant was presented to the jury except the results of the blood tests which were clearly not subject to privilege. Defendant does not set forth the nature of the privileged information revealed by the nurse or physician.

■ Both the physician and the nurse gave adequate foundation testimony to support the information they gave the jury. No objection was made at trial as to the foundation testimony of the physician. In any event, she (1) testified the report was made when she had knowledge of the matters stated therein; (2) indicated the report was made in the regular course of giving assistance to defendant in diagnosing his condition; (3) used the blood test in diagnosing and treating defendant; and (4) had the blood tests done in the hospital laboratory. The nurse testified that she performed the tests at the physician's request, recorded the results on a form while the event was fresh in her memory, and that in doing so she was performing in the regular course of her responsibilities. The nurse gave a sufficient explanation that the machine was frequently tested and shown to be accurate. Defendant contends he was denied sufficient cross-examination of the nurse but has not cited the portion of the record where that is shown.

Defendant further challenges the admission of the blood test results on the ground that, "[t]here has to be some testimony in the case allowing for not only some foundation for proper test procedures, but also some evidence upon which the court can determine that the machine itself was a reliable testing device." We disagree. As this court wrote in *People v. Hoke* (1991), 213 Ill. App. 3d 263, 269-70, 571 N.E.2d 1143, 1147:

> "[Section 11—501.4 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4)] ensures trustworthiness and reliability by requiring the timely involvement of the physician actually treating the person whose blood test results are at issue. The legislature obviously concluded that if these blood-alcohol test results are sufficiently trustworthy and reliable for the emergency room physician to use and consider when deciding what treatment is appropriate, then those results are sufficiently trustworthy and reliable to be received into evidence at a later trial."

Thus, as foundation for the admissibility of blood-alcohol test results, under section 11—501.4 of the Illinois Vehicle Code, the State need not present any evidence regarding either the appropriateness of the

test procedures or the good working condition of the machinery utilized.

We conclude no error occurred in the obtaining or presentation into evidence of the information about the blood tests given defendant.

■ Last, defendant contends the court erred in refusing to allow him to present evidence of a blood test performed on the victim. The offer of proof indicates that blood tests revealed an alcohol concentration at the .08 level. Such information could have a bearing upon whether the victim was reckless or negligent in driving her car; but neither alleged recklessness nor negligence would excuse reckless conduct upon defendant's part. In supporting any contention that the victim's recklessness was the sole proximate cause of her death, the evidence would give only minimal aid and would be likely to interject much tangential evidence. (See *People v. Gruner* (1985), 130 Ill. App. 3d 1042, 474 N.E.2d 1355.) The court did not abuse its discretion in denying admission of the evidence. *People v. Enis* (1990), 139 Ill. 2d 264, 281, 564 N.E.2d 1155, 1161.

The defendant's conviction and sentence are reversed and the cause is remanded to the circuit court of Douglas County for a new trial.

Reversed and remanded.

STEIGMANN and LUND, JJ., concur.