THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID ERIC MENSSEN, a/k/a Eric D. Menssen, Defendant-Appellant.

Fourth District    No. 4—93—0900

Argued May 17, 1994.—Opinion filed June 27, 1994.—Rehearing denied August 2, 1994.

Paul R. Welch (argued), of Costigan & Wollrab, P.C., of Bloomington, for appellant.

John B. Huschen, State's Attorney, of Eureka (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial conducted in the circuit court of Woodford County, defendant David Eric Menssen, a/k/a Eric D. Menssen, was found guilty of driving while under the influence of alcohol (DUI) (Woodford County case No. 92—TR—2426). (Ill. Rev. Stat. 1991, ch. 95$^{1}$/$_{2}$, par. 11—501(a)(1).) In a consolidated case, the defendant was tried on a charge of assault and his motion for directed verdict at the close of the evidence was granted (Woodford County case No. 92—

CM—186). (Ill. Rev. Stat. 1991, ch. 38, par. 12—1(a).) Defendant was sentenced on the DUI to 24 months' probation and ordered to pay a $750 fine, perform 75 hours of public service work, attend a victim-impact panel, complete an alcohol evaluation, and complete any recommended treatment.

On review, the issues raised are (1) whether the trial court should have granted defendant a mistrial because of the State's failure to produce medical records in compliance with an agreement for voluntary disclosure, and (2) whether the trial court erred by admitting into evidence serum-alcohol test results. We affirm.

On August 25, 1992, the circuit court entered an order setting trial for September 14, 1992. That order also required that all discovery be completed at least seven days before the final pretrial conference, scheduled for September 8, 1992. After a continuance, a similar order was entered on December 22, 1992, setting January 19, 1993, as the trial date and January 5, 1993, as the final pretrial conference.

At trial, Dr. Richard Miller, who treated defendant at St. Francis Medical Center on May 28, 1992, testified for the State. During defense counsel's cross-examination, Miller was asked about any information he had regarding defendant's imbibing alcoholic beverages in relation to his injury at the time he was driving. Miller referred to a nursing record, which had not been submitted as an exhibit, and read from it as follows:

"This is a 51-year-old white male presented to St. Francis emergency room per ambulance after an altercation. Patient states has been drinking since 1600—that is 4:00 p.m.—beer. Was tailgating a car when the car stopped and driver confronted him, hit him times one in the head."

Miller added that this was a nursing record which was part of the medical records which were routinely consulted in evaluating a patient. At the time, defendant did not object to the testimony or move to strike it.

During further cross-examination, Miller was asked about signs of alcohol imbibing, and he again referred to the nursing record. At that point, defense counsel stated the defense did not have nursing records from the hospital and asked that the testimony about them be stricken. The trial court did not make a ruling, but informed the jurors that the rules of discovery in felony cases are not available in a misdemeanor case such as this. Because the trial judge did not know what had been previously requested, he directed the parties to proceed with the trial.

After Miller finished testifying, the defense counsel made a more

specific objection outside the presence of the jury. Defense counsel stated he was provided medical records which were provided to the State as a result of a grand jury subpoena of hospital records. The subpoena referred to all medical records. Defense counsel assumed the nursing records were not provided to the State, and objected to Miller referring to those notes, because the content and the identity of the author had not previously been disclosed. The State argued that Miller was merely refreshing his recollection and there was no need to provide in discovery documents which a witness would use to refresh his recollection. However, defense counsel pointed out that Miller read from the nursing record and was not refreshing his recollection. No ruling was made by the trial court at that time.

Prior to the resumption of trial the next day, defendant presented a written motion for mistrial based on Miller having testified about the undisclosed nursing record. It was still defense counsel's understanding that the nursing record had not been provided to the State pursuant to the subpoena. In argument, defense counsel also noted that there had been a pretrial suppression hearing relating to admissions and statements allegedly made by defendant and that there was a continuing objection to the introduction of such evidence. Defense counsel stated he had not envisioned "some nurse" taking a statement from defendant. Defense counsel further noted that, although the supreme court rules regarding discovery in criminal cases do not apply to misdemeanor trials (134 Ill. 2d Rules 411 through 415), a motion for discovery was filed and the State complied by voluntarily exchanging information with the defense.

The State acknowledged that the document had been produced pursuant to the subpoena on December 9, 1992. Nevertheless, the State argued that mistrial was too severe a remedy, defendant was not prejudiced in light of other testimony, and Miller's reference to the notes came in response to cross-examination. The trial court denied defendant's motion for mistrial.

There are several problems with defendant's position on appeal. First, the nursing records were not something which were otherwise unavailable to defendant. They were part of defendant's own medical records and would have been supplied to him by the hospital had he asked for them. Second, there is no order directing the State to disclose all medical records in its possession. The trial court's order provided discovery was to be completed seven days before the first pretrial conference and the parties were to give the court prompt written notice of any default in discovery. The parties agree a discovery motion was filed and the State informally agreed to supply all documents which had been supplied to the State as a result of the

grand jury subpoena. Third, the supreme court rules regarding discovery do not apply to misdemeanor cases. (*People v. Schmidt* (1974), 56 Ill. 2d 572, 574-75, 309 N.E.2d 557, 558; *People v. Elbus* (1983), 116 Ill. App. 3d 104, 107, 451 N.E.2d 603, 605; 134 Ill. 2d R. 411.) Fourth, the State did not attempt to introduce this document into evidence or ask Miller about it. Instead, Miller referred to it on cross-examination by defense counsel, who opened the door to any evidence Miller had of alcoholic consumption by defendant. Fifth, defendant did not move to strike the testimony, or even object to it initially, and did not ask for a recess or continuance in order to more fully prepare the defense because of this arguably "surprise" evidence. Sixth, defendant was allowed to present a witness, John Penn, who was previously undisclosed to the State, in order to refute the statement in the nursing record that defendant had been drinking beer since 4 p.m.

■ The determination of the propriety of declaring a mistrial lies within the discretion of the trial court, and a mistrial should be declared only if there is some occurrence at trial which is of such character and magnitude that the party seeking the mistrial is deprived of a fair trial. (*People v. Redd* (1990), 135 Ill. 2d 252, 323, 553 N.E.2d 316, 348.) On appeal, the granting or denying of a motion for mistrial is reviewed under an abuse of discretion standard. *People v. Ortiz* (1992), 151 Ill. 2d 1, 12, 600 N.E.2d 1153, 1157, citing *People v. Laws* (1963), 29 Ill. 2d 221, 225, 193 N.E.2d 806, 808; *People v. Marty* (1993), 241 Ill. App. 3d 266, 271, 608 N.E.2d 1326, 1330; *People v. Logston* (1990), 196 Ill. App. 3d 30, 33, 552 N.E.2d 1266, 1268.

■ Discovery procedures which have developed under case law in favor of defendants in misdemeanor cases are not in conflict with the discovery provisions of the supreme court rules, including providing defendant with a list of witnesses, the results of any breathalyzer test, any inculpatory statement made by defendant, and any evidence which tends to negate defendant's guilt. (*People v. Williams* (1981), 87 Ill. 2d 161, 164-65, 429 N.E.2d 487, 488, citing *Schmidt*, 56 Ill. 2d at 575, 309 N.E.2d at 558.) Although the supreme court rules do not provide the basis for sanctions in misdemeanor cases, a court has inherent power to enforce its orders. The sanctions imposed must be appropriate to the circumstances. The ultimate object is to compel discovery, not to punish the opposing party for an oversight of an attorney. Moreover, the exclusion of evidence is a harsh sanction which does not contribute to the goal of truth seeking. (*People v. Petru* (1977), 52 Ill. App. 3d 676, 678-79, 367 N.E.2d 980, 981-82.) In *People v. Pondexter* (1991), 214 Ill. App. 3d 79, 85, 573 N.E.2d 339, 343, a case involving sanctions under the supreme court rules, this

court noted the preferred sanction for a discovery violation which was not blatant was a recess or continuance if that relief would protect the other party from surprise or prejudice. Ordering a mistrial in such a case would not be appropriate as the sanctions are designed to accomplish the purpose of discovery, not to encroach on a fair trial. In the case at bar, there was no court order regarding discovery to enforce.

> "The burden of showing surprise or prejudice is upon the defendant, and the failure to request a continuance is a relevant factor to consider in determining whether the new testimony actually surprised or unduly prejudiced the defendant. *** A defendant cannot request only the most drastic measures, such as either an immediate mistrial or the total exclusion of testimony by a witness, and then on appeal argue that he is entitled to a new trial when these requests are not granted." *People v. Robinson* (1993), 157 Ill. 2d 68, 78-79, 623 N.E.2d 352, 357-58.

■ A defendant cannot complain about the admission of testimony, even if improper, which was procured or invited by defense trial tactics. (*People v. Payne* (1983), 98 Ill. 2d 45, 50, 456 N.E.2d 44, 46; *People v. Harp* (1990), 193 Ill. App. 3d 838, 844, 550 N.E.2d 1163, 1167.) Nor can defendant complain on appeal about evidence which was elicited on cross-examination by defense counsel and which defendant did not move to strike. *People v. Lucas* (1992), 151 Ill. 2d 461, 489-90, 603 N.E.2d 460, 473; *People v. Strater* (1979), 72 Ill. App. 3d 486, 489, 390 N.E.2d 979, 982; *People v. Jones* (1979), 70 Ill. App. 3d 338, 348-49, 387 N.E.2d 1010, 1017.

■ The defendant did move to strike Miller's testimony the second time he referred to the nursing records. However, defendant did not expressly state he was moving to strike the earlier reference to the nursing record. An untimely motion to strike amounts to a waiver of the right to object. (*People v. Bean* (1974), 17 Ill. App. 3d 377, 382-83, 308 N.E.2d 334, 338.) Here, there would appear to have been just a matter of minutes between the two statements by Miller. Nevertheless, defense counsel did not expressly state he was moving to strike the first reference, which was the most damaging. The denial of the motion for mistrial was not an abuse of discretion.

The next issue is whether the trial court erred by admitting into evidence serum-alcohol test results.

> "The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's decision may not be overturned on appeal absent a clear abuse of discretion. (*People v. Franklin* (1990), 135 Ill. 2d 78, 96; *People v. Brown* (1990), 199 Ill. App. 3d 860; *People v. Kimbrough* (1985), 138 Ill. App. 3d

481.) Such an abuse of discretion will be found only where the trial court's decision is ' "arbitrary, fanciful or unreasonable" ' or ' "where no reasonable man would take the view adopted by the trial court." ' (*People v. M.D.* (1984), 101 Ill. 2d 73, 90, quoting *Peek v. United States* (9th Cir. 1963), 321 F.2d 934, 942.)" *People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519.

On appeal, defendant has three contentions: (1) the computer printout showing the test result was not admissible under section 11—501.4 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501.4); (2) the test was performed for serum alcohol, not blood alcohol, in violation of section 11—501.2 of the Code (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501.2); and (3) the results were inadmissible because the treatment and medication given to defendant prior to the test were not shown to have no effect on the results.

■ Miller identified a computer printout indicating a serum-alcohol test performed on May 28, 1992, at 10:32 p.m. showing a .238 alcohol level as verified by a pathologist, Dr. Michael Hayes, who also testified in this case. Section 11—501.4(a) of the Code pertains to blood-alcohol tests and their admissibility.

In *People v. Rushton* (1993), 254 Ill. App. 3d 156, 165-69, 626 N.E.2d 1378, 1386-89, the results contained in defendant's permanent medical summary, generated 10 days after the blood test was done, and on the face sheet of defendant's emergency room chart, were admissible under section 11—501.4. The court concluded:

> "[T]he memorialization of defendant's test result in a computer-stored form was sufficient to satisfy the 'writing' requirement of section 11—501.4. The subsequent printout of defendant's permanent medical summary, or for that matter the original emergency room printout, is merely a copy of this 'writing' and can be considered analogous to a photocopy of a printed document." (*Rushton*, 254 Ill. App. 3d at 169, 626 N.E.2d at 1389.)

The *Rushton* court specifically rejected defendant's argument that the document admitted into evidence was not "the" written result which was received and considered by the doctors who were treating and diagnosing defendant. *Rushton*, 254 Ill. App. 3d at 166-67, 626 N.E.2d at 1387-88.

In *People v. Ethridge* (1993), 243 Ill. App. 3d 446, 610 N.E.2d 1305, the court stated there was no practical or legal difference between a written recordation of the results and a printout generated by a computer integrally connected to the testing instrument. It certainly makes no difference to the treating physician, and to require otherwise might hinder treatment. (*Ethridge*, 243 Ill. App. 3d at 463, 610 N.E.2d at 1316.) In light of the testimony by Miller that the

practice of St. Francis was to generate a new printout after every test, the new printout was cumulative in that it referenced every test given to defendant while he was in contact with the hospital, and the old printouts were discarded, we find *People v. Mueller* (1991), 221 Ill. App. 3d 234, 581 N.E.2d 817, distinguishable. Furthermore, if any error did occur, it was harmless. *Rushton*, 254 Ill. App. 3d at 169, 626 N.E.2d at 1389; *People v. Saulsburry* (1989), 178 Ill. App. 3d 857, 863-64, 533 N.E.2d 1154, 1157-58.

■ We reject defendant's argument that serum-alcohol test results are not admissible at all.

Section 11—501.2(a) of the Code states, in relevant part:

"[E]vidence of the concentration of alcohol, other drug or combination thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath *or other bodily substance*, shall be admissible. ***

1. Chemical analyses of the person's blood, urine, breath *or other bodily substance* to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police by an individual possessing a valid permit issued by that Department for this purpose." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.2(a)(1).)

Therefore, we interpret this statute to permit serum-alcohol tests.

Defendant also seems to argue that, since under section 11—501.2(a)(5) of the Code "[a]lcohol concentration shall mean either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath," the serum-alcohol results are not reliable. Two doctors testified that the serum test results could predictably be anywhere from 12% to 20% higher than the blood-alcohol test. A simple mathematical calculation would show that translating the serum-alcohol results to blood-alcohol level still places defendant in a state of intoxication. *Rushton*, 254 Ill. App. 3d at 160-62, 626 N.E.2d at 1383-84.

■ Defendant's final argument is that the State failed to prove that the "IV" given to defendant by the rescue squad and the treatment of defendant's ankle did not affect the accuracy of the serum-alcohol test. Defendant points to no direct evidence of the nature of the IV fluids or the type of treatment given to defendant's ankle by the rescue squad.

In *People v. Miller* (1988), 166 Ill. App. 3d 155, 158, 519 N.E.2d 717, 720, the court required the State to prove the accuracy of the blood tests where the defendant had intravenous tubes in her arms

and was administered medication during or shortly before a blood test. According to *Miller*, it was not the defendant's duty to prove the test inaccurate, and the failure of the State to establish a proper foundation rendered the evidence erroneously admitted.

In this case, the evidence was adequate to sustain the State's burden. (See *Rushton*, 254 Ill. App. 3d at 165-66, 626 N.E.2d 1386-87.) Miller testified the IV fluids would not affect the test results. Hayes stated that the test procedures instruct that an alcohol-containing antiseptic not be used when the blood is drawn. However, even if used, it would have a very small impact.

As a foundation for admissibility of written test results under section 11—501.4 of the Code, the State need not present evidence regarding appropriate test procedures or the good working condition of the machinery used. (*People v. Crowe* (1992), 232 Ill. App. 3d 955, 967-68, 598 N.E.2d 293, 301.) Here, there is no challenge to the serum-alcohol analysis as being a procedure not generally accepted in the scientific community. Where that issue is not raised, or in cases where the test has been determined to be generally accepted, then the question of the reliability of the test goes to the weight to be given that testimony. See *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 436, 574 N.E.2d 1345, 1359-60; *People v. Redman* (1985), 135 Ill. App. 3d 534, 540, 481 N.E.2d 1272, 1277.

For the foregoing reasons, the judgment of the circuit court of Woodford County is affirmed.

Affirmed.

LUND and STEIGMANN, JJ., concur.