THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY M. LUTH, Defendant-Appellant.

Fourth District    No. 4—01—0165

Opinion filed November 20, 2002.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Diane Sipich, State's Attorney, of Tuscola (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE TURNER delivered the opinion of the court:

In October 2000, the State charged defendant, Gary M. Luth, with

the offense of driving with a blood-alcohol concentration of 0.08 or more (625 ILCS 5/11—501(a)(1) (West 2000)). In January 2001, a jury returned a verdict of guilty. Thereafter, the trial court sentenced defendant to 30 days in jail and 18 months' probation, along with over $600 in fines. On appeal, defendant argues the State's use of his serum blood-alcohol test results failed to prove his guilt beyond a reasonable doubt. We affirm.

## I. BACKGROUND

In July 2000, defendant received a uniform traffic complaint charging him with failure to reduce speed to avoid an accident following a two-vehicle collision. The State, in September 2000, charged defendant with failure to reduce speed and sought review of medical records for the possibility of filing additional charges. In October 2000, the State charged defendant with driving with a blood-alcohol concentration of 0.08 or more, a Class A misdemeanor (625 ILCS 5/11—501(c) (West 2000)), alleging he drove a motor vehicle with a blood-alcohol concentration of 0.08 or above. In January 2001, the State moved to dismiss the count charging defendant with failure to reduce speed to avoid an accident, which the trial court granted. Thereafter, defendant's jury trial commenced.

Josh Huber testified that on July 23, 2000, he was preparing to stop at an intersection in Douglas County when defendant ran his motorcycle into the back of Huber's pickup truck. Huber exited his vehicle and dialed 9-1-1.

Clinton Howard, a Douglas County deputy sheriff, testified he arrived at an accident scene on July 23, 2000. He secured the accident site and found defendant lying in the westbound lane. After clearing the scene, he returned to the sheriff's office to finish the accident report. Deputy Howard later received a call from the hospital indicating defendant's blood-alcohol level measured 0.181. Hospital staff asked if Deputy Howard was en route to hold a standard sample kit for driving-under-the-influence cases. Deputy Howard indicated he did not believe he could make it to the hospital before defendant underwent surgery.

John Sanderson, an assistant phlebotomy supervisor at Carle Hospital in Champaign, testified he was on duty on July 23, 2000, when defendant was transported as a trauma patient. Sanderson indicated he drew the standard blood panel, which included testing a patient's blood-alcohol content, and sent it to the laboratory.

Bridget Wallace, a medical technologist, testified she ran a comprehensive panel on defendant's blood. The computer-generated report indicated the serum-alcohol level. On cross-examination, Wal-

lace agreed serum blood is not the same as whole blood. She testified whole blood separates into serum, the "clear yellowish portion" of the blood. Wallace also stated the serum-alcohol result in defendant's case was 0.181 grams per deciliter of serum. She could only "assume" testing for substances in whole blood would yield a different result than testing for substances in serum blood.

Dr. Sidney Rohrscheib, a general surgeon, testified defendant arrived in the emergency room, where standard blood tests were performed. He stated he received defendant's results showing a serum-alcohol level of 0.181 grams per deciliter. Dr. Rohrscheib testified that "serum is that fraction of the blood[,] when spun down in an old[-]fashion[ed] centrifuge, [that] is devoid of all the cellular material and debris, so it's that portion of the blood after you've subtracted all the white cells and red cells." He stated whole blood is serum plus the cellular component put back in. He postulated that serum is probably "very close" to whole blood, within 10% and 20% when compared with whole blood. Dr. Rohrscheib stated serum-blood results are converted into whole-blood results by multiplying the serum value by a conversion factor "between 80 and 90 percent." He stated a 60% difference between serum blood and whole blood would be "impossible." Dr. Rohrscheib opined that the value of 0.181 in this case, when converted to a whole-blood value, "might drop between 10 and 20 percent." He also stated there was no one standard conversion table rate but many that are all within a range of 10% to 20%. No tests analyzing defendant's whole blood were performed at the hospital.

After the State rested its case, defense counsel called Thomas Burr, a forensic scientist. He indicated he had studied the testing of whole blood and serum blood with reference to alcohol content. Burr testified there is no established conversion table for converting a serum-alcohol result to a whole-blood-alcohol result. He stated the standard determining impairment is 0.08 grams per 100 milliliters of whole blood, but there is no standard for serum blood. Burr stated the serum measurement can range 3% to 60% higher than the whole-blood-alcohol concentration, although the average is between 10% and 20%. If the difference amounted to 60%, Burr calculated a serum-alcohol level in this case would convert to a whole-blood-alcohol level of 0.07.

Following closing arguments, the jury found defendant guilty on the charge of driving under the influence of alcohol with a blood-alcohol content of 0.08 or more. In February 2001, defendant filed a motion for new trial or for judgment of acquittal notwithstanding the verdict, which the trial court denied. Thereafter, the trial court sentenced defendant to 30 days in jail, 18 months' probation, imposed

over $600 in fines, and ordered defendant to attend a victim-impact panel and complete any recommended treatment. This appeal followed.

## II. ANALYSIS

Defendant argues the State's use of the serum-alcohol test results failed to establish the alcohol concentration in his blood was 0.08 or more based upon the definition of "blood" under section 11—501.2 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—501.2 (West 2000)). We disagree.

■ It is the responsibility of the trier of fact to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259, 752 N.E.2d 410, 425 (2001). When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996).

■ A person can be convicted of driving while under the influence of alcohol if "the alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units in [s]ection 11—501.2." 625 ILCS 5/11—501(a)(1) (West 2000). Section 11—501.2 of the Vehicle Code provides, in part:

"[E]vidence of the concentration of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath[,] or other bodily substance, shall be admissible." 625 ILCS 5/11—501.2(a) (West 2000).

Section 11—501.2(a)(5) also provides:

"Alcohol concentration shall mean either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." 625 ILCS 5/11—501.2(a)(5) (West 2000).

In *People v. Menssen*, 263 Ill. App. 3d 946, 947, 636 N.E.2d 1101, 1102 (1994), a jury convicted the defendant of driving under the influence of alcohol. On appeal, the defendant argued, *inter alia*, that the trial court erred in admitting serum-alcohol test results into evidence. *Menssen*, 263 Ill. App. 3d at 948, 636 N.E.2d at 1106. This court held section 11—501.2(a) of the Vehicle Code permitted serum-alcohol test results. *Menssen*, 263 Ill. App. 3d at 953, 636 N.E.2d at 1106. The defendant also questioned the reliability of such results. *Menssen*, 263 Ill. App. 3d at 953, 636 N.E.2d at 1106. This court disagreed and stated:

"Two doctors testified that the serum test results could predictably be anywhere from 12% to 20% higher than the blood-alcohol test. A simple mathematical calculation would show that translating the serum-alcohol results to blood-alcohol level still places defendant in a state of intoxication." *Menssen*, 263 Ill. App. 3d at 953, 636 N.E.2d at 1106.

Other courts have allowed experts to testify as to a defendant's serum-alcohol levels. See *People v. Rushton*, 254 Ill. App. 3d 156, 161-62, 626 N.E.2d 1378, 1384 (1993); *People v. Ethridge*, 243 Ill. App. 3d 446, 458-59, 610 N.E.2d 1305, 1312-13 (1993); *People v. Allan*, 231 Ill. App. 3d 447, 452-53, 595 N.E.2d 1317, 1322-23 (1992).

In *People v. Thoman*, 329 Ill. App. 3d 1216, 1217, 770 N.E.2d 228, 229 (2002), a jury convicted the defendant of driving with a blood-alcohol concentration of 0.08 or more in violation of section 11—501(a)(1) of the Vehicle Code (625 ILCS 5/11—501(a)(1) (West 2000)). In that case, the defendant was involved in an accident and transported to the hospital, where standard procedure included alcohol analysis based on his blood serum rather than whole blood. *Thoman*, 329 Ill. App. 3d at 1218, 770 N.E.2d at 230. At trial, no evidence was presented regarding the alcohol content in the defendant's whole blood or how serum-alcohol results related to whole-blood results. *Thoman*, 329 Ill. App. 3d at 1218, 770 N.E.2d at 230. The defendant argued on appeal the State failed to prove his guilt beyond a reasonable doubt by not presenting evidence that his whole-blood-alcohol concentration was 0.08 or more. *Thoman*, 329 Ill. App. 3d at 1218, 770 N.E.2d at 230.

The Fifth District, explaining the difference between blood serum and whole blood, noted blood-serum results are admissible at trial, but the State must prove beyond a reasonable doubt the defendant's whole-blood-alcohol concentration amounted to 0.08 or more. *Thoman*, 329 Ill. App. 3d at 1218, 770 N.E.2d at 230. "Evidence of a defendant's whole[-]blood[-]alcohol concentration level may stem from actual whole[-]blood[-]alcohol concentration test results or from blood serum[-]alcohol concentration test results converted into whole blood equivalents." *Thoman*, 329 Ill. App. 3d at 1218, 770 N.E.2d at 230. The appellate court found the State failed to present either type of evidence but only offered the defendant's blood serum-alcohol concentration test result. *Thoman*, 329 Ill. App. 3d at 1219, 770 N.E.2d at 231. The lack of evidence before the jury concerning a conversion factor through expert testimony required reversal of the defendant's conviction. *Thoman*, 329 Ill. App. 3d at 1220, 770 N.E.2d at 231-32.

■ In the case *sub judice*, the jury was confronted with conflicting evidence as to the conversion of serum-alcohol results to whole-blood equivalents. However, the jury has the responsibility to resolve

conflicts in the evidence and draw reasonable inferences therefrom. Dr. Rohrscheib testified to the variation between serum blood and whole blood and noted a serum value, when converted to a whole-blood value, might drop between 10% and 20%. His testimony indicated using the conversion factor in this case would lead to a whole-blood value above 0.08 grams of alcohol per 100 milliliters of blood. He disagreed the difference between the values could be as much as 60%. While he agreed a change by 60% was feasible, it would be unusual to find in the normal population. Burr testified the average difference between serum- and whole-blood levels is around 10% to 20%, but the difference can cover a range from 3% to 60%. The jury was entitled to weigh the testimony presented by the medical technologist, the general surgeon, and defendant's expert witness. The evidence included details on a conversion factor, and the jury's apparent reliance on Dr. Rohrscheib's 10% to 20% difference between the value of serum blood and whole blood still allowed for a finding that defendant's blood-alcohol level was 0.08 or more. When viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of driving with a blood-alcohol concentration of 0.08 or more beyond a reasonable doubt.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and APPLETON, JJ., concur.