2018 IL App (2d) 151142
No. 2-15-1142
Opinion filed February 21, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-DT-2031 |
| NINA M. ROBLEDO, | ) ) ) | Honorable Veronica M. O'Malley, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial in the circuit court of Lake County, defendant, Nina M. Robledo, appeals her conviction of driving with a blood alcohol concentration (BAC) of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2014)).   We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On September 28, 2014, at 1:45 a.m., Officer Michael Bond of the Mundelein Police Department observed defendant driving a car with only one headlight illuminated.   He followed the car onto a residential street, where it pulled into a driveway.   During that brief time, Bond did not notice anything unusual about the way the car was being driven.   Defendant exited the

car and walked behind a house on the property. Bond approached the car's passenger to advise her that a headlight was out. At that moment, defendant reappeared and informed Bond that she pulled into the driveway because her license was suspended and she did not want to be arrested. Bond smelled a moderate odor of alcohol on defendant's breath, and he noticed that her eyes were bloodshot and "droopy." Defendant displayed no other signs of intoxication. Defendant told Bond that she had drunk "a couple" of Mike's Hard Lemonades and a "swig" of Corona. Bond arrested defendant for driving with a suspended license, and she agreed to perform field sobriety tests at the police station.

¶ 4    Following defendant's performance of the field sobriety tests, Bond informed defendant that she was "borderline." Defendant agreed to take a breath test. Bond observed defendant for 20 minutes, during which she did not put anything into her mouth. Defendant then blew into an Intox EC/IR-II machine, with a result of 0.082. Bond arrested defendant for driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2014)) and driving with a BAC of 0.08 or more.

¶ 5    At trial, Bond testified to the above facts. He also testified that he was a certified breath-analysis operator and that the breath-test machine checks itself monthly for accuracy. Bond explained that a dry gas container inside the machine is calibrated to give a result of 0.079. According to Bond, the machine did internal checks and performed certification tests on September 2, 2014, and October 1, 2014, and both tests accurately measured the alcohol concentration in the dry gas container at 0.079. Bond testified that the machine has a margin of error of plus or minus 0.005.

¶ 6    Defendant did not contest Bond's testimony or the admissibility of the breath-test result. However, defendant moved for a directed verdict on the basis that her actual BAC could have

been below the legal limit, given the machine's margin of error. The trial court denied the motion, and defendant repeated her argument to the jury. The prosecution argued to the jury that the margin of error meant that defendant's BAC actually exceeded 0.082. The jury found defendant not guilty of driving under the influence of alcohol, but it found her guilty of driving with a BAC of 0.08 or more. The court sentenced defendant to a period of supervision and a fine.[1] Defendant filed a timely appeal.

¶ 7                                    II. ANALYSIS

¶ 8     Defendant contends that she was not proved guilty beyond a reasonable doubt where her BAC could have been as low as 0.077, given the machine's margin of error. Both parties represent that this is an issue of first impression and point us to decisions of foreign jurisdictions. While no Illinois court has specifically addressed the issue of a breath-test machine's margin of error, it is well settled in Illinois that any question of the reliability of evidence is properly considered by the jury in determining what weight to give that evidence. *People v. Lipscomb*, 215 Ill. App. 3d 413, 432 (1991); *People v. Mehlberg*, 249 Ill. App. 3d 499, 539 (1993). The relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Luth*, 335 Ill. App. 3d 175, 178 (2002).

¶ 9     Section 11-501(a)(1) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(1) (West 2014)) provides that a person shall not drive or be in actual physical control of any vehicle while the alcohol concentration in the person's blood is 0.08 or more. The necessary elements of the offense are (1) the driving or actual physical control of a motor vehicle and (2) a BAC of

---

[1] Defendant was also convicted of driving with a suspended license and driving without insurance. She does not appeal those convictions.

0.08 or more. *People v. Smith*, 2015 IL App (1st) 122306, ¶ 28. The trier of fact must determine the credibility of witnesses and the weight to give their testimony, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. *Luth*, 335 Ill. App. 3d at 178.

¶ 10 Section 11-501.2(a) of the Code provides in relevant part that evidence of the concentration of alcohol in a person's breath is admissible in a criminal prosecution under section 11-501. 625 ILCS 5/11-501.2(a) (West 2014). Section 11-501.2(a) further states that a chemical analysis of a person's breath is considered valid if it was performed according to standards promulgated by the Department of State Police (Department). 625 ILCS 5/11-501.2(a) (West 2014). To lay a proper foundation for the admission of the result of a breath test, the prosecution must establish that the breath test was performed in accordance with those standards. *People v. Olson*, 2013 IL App (2d) 121308, ¶ 9. We, therefore, look to the Department's standards, as set forth in administrative regulations. Administrative regulations have the force and effect of law. *People v. Clairmont*, 2011 IL App (2d) 100924, ¶ 17.

¶ 11 Section 1286.200 of Title 20 of the Illinois Administrative Code provides that the following procedures establish the accuracy of breath-testing instruments: (1) the instrument was approved at the time of the subject test, (2) the performance of the instrument was within the accuracy tolerance according to the last accuracy check prior to the subject test, (3) no accuracy check has been performed since the subject test, or the next accuracy check after the subject test was within the accuracy tolerance, and (4) accuracy checks have been done in a timely manner, meaning not more than 62 days passed between the last accuracy check and the subject test. 20 Ill. Adm. Code 1286.200 (2009). When these conditions are met, a rebuttable presumption exists that the instrument was accurate at the time of the subject test. 20 Ill. Adm. Code 1286.200 (2009).

¶ 12    Here, the evidence shows that Bond was a certified breath-analysis operator when he administered the breath test to defendant and that the particular breath-test machine used to perform the test was approved by the Department.    Bond testified, and printouts of the certification checks show, that the machine satisfactorily performed an accuracy test on September 2, 2014 (26 days prior to the subject test), and on October 1, 2014 (3 days after the subject test).    Bond testified that the machine's dry gas container is calibrated to produce a reading of 0.079 during the accuracy checks.    The printouts show that the machine's readings were 0.079 on both occasions.    Thus, the State established that the machine was accurate at the time of defendant's test.    Defendant argues that there is no evidence that the margin of error did not apply to the accuracy checks, but that argument is specious.    If there had been an error, the machine would not have produced a reading of 0.079 during the accuracy tests.

¶ 13    As noted, defendant did not contest the admissibility of the breath-test result.    The result's reliability was, therefore, for the jury to determine.[2]    In *People v. Barbic*, 105 Ill. App. 2d 360 (1969), a prosecution for speeding, the evidence showed that a radar device was set for a speed of 65 miles per hour and tested perfectly at all times on the day of the defendant's arrest. *Barbic*, 105 Ill. App. 2d at 362.    The evidence showed that the radar device had a possible percentage of error of less than 1%.    *Barbic*, 105 Ill. App. 2d at 362-63.    The defendant was arrested for driving 62 miles per hour in a posted speed zone of 50 miles per hour, based upon the radar reading.    *Barbic*, 105 Ill. App. 2d at 361.    The defendant testified that he was traveling 50 miles per hour, as shown by a tachograph in his truck that recorded his speed. *Barbic*, 105 Ill. App. 2d at 365.    The trial court found the defendant guilty, and, on appeal, the

---

[2] At oral argument, defendant conceded this point, which fundamentally contradicts her position that no rational juror could find her guilty.

defendant argued that the State failed to prove him guilty beyond a reasonable doubt, because the radar unit was subject to error in both its structure and its operation. *Barbic*, 105 Ill. App. 2d at 362. This court affirmed, noting that the radar device tested accurately both before and after the defendant's arrest. *Barbic*, 105 Ill. App. 2d at 368. We also noted that both the radar device and the tachograph were subject to error and that it was the function of the trier of fact to determine the weight to be afforded the evidence. *Barbic*, 105 Ill. App. 2d at 370-71.

¶ 14 Similarly, the Illinois Appellate Court has held that the reliability of DNA evidence and the weight to be given it are issues for the jury to decide. *Lipscomb*, 215 Ill. App. 3d at 432-33. In *People v. Eyler*, 133 Ill. 2d 173, 212 (1990), our supreme court likewise held that the reliability of fingerprint evidence was for the jury to weigh where there was evidence that a technique known as "supergluing" fingerprints could result in misidentification.

¶ 15 Illinois law is dispositive of this appeal. We look to the decisions of foreign jurisdictions to provide persuasive authority for our analysis only when there is no Illinois authority on a particular issue. *People v. Bensen*, 2017 IL App (2d) 150085, ¶ 30. Thus, we do not rely on the foreign cases cited by the parties. Nevertheless, we will briefly discuss those cases relied upon by defendant.

¶ 16 Defendant's reliance on *State v. Bjornsen*, 271 N.W.2d 839 (Neb. 1978), is misplaced. In *Bjornsen*, the result of a blood test showed the defendant's intoxication. *Bjornsen*, 271 N.W.2d at 840. However, on cross-examination, the State's expert conceded that the blood test's margin of error made it possible that the defendant's actual BAC was below the legal limit of intoxication. *Bjornsen*, 271 N.W.2d at 840. There was no such concession in our case. Other cases that defendant cites are similarly inapposite. In *Haynes v. State*, 865 P.2d 753, 756 (Alaska 1993), although the court held that the breath-test machine's margin of error must be

applied in the defendant's favor, there was no evidence that the machine had been certified to be accurate. In *State v. Boehmer*, 613 P.2d 916, 918 (Haw. Ct. App. 1980), the court followed *Bjornsen* and held that evidence of the breath-test machine's accuracy was irrelevant. That holding is contrary to Illinois law, as section 11-501.2(a) of the Code provides that breath-test results are considered valid if the Department's procedures are followed. In *State v. Prestier*, 455 N.E.2d 24, 27 (Ohio, New Philadelphia, Mun. Ct. 1982), the court held that the jury should not be instructed on a statutory presumption of intoxication where the defendant tested between 0.10 and 0.109, due to the subject machine's margin of error. *Prestier* is inapplicable, because the jury in our case was instructed that the presumption of intoxication did not apply to the charge of driving with a BAC of 0.08 or more (see Illinois Pattern Jury Instructions, Criminal, No. 23.30 (approved Apr. 4, 2014)). Similarly, *People v. Campos*, 188 Cal. Rptr. 366 (App. Dep't Super. Ct. 1982), involved an instruction on the presumption of intoxication, and it is distinguishable for the same reason.

¶ 17    Essentially, defendant argues that we must, in all cases, require the prosecution to prove that a test result exceeds 0.08 by the margin of error recognized in the testing process. Defendant arrives at this conclusion because, according to defendant, section 11-501(a)(1) requires the prosecution to prove a defendant's actual BAC, as opposed to merely a breath-test result. By focusing solely on the language in section 11-501(a)(1), however, defendant ignores the other pertinent provisions of the Code. A statute must be read as a whole, and all relevant parts should be considered. *People v. Reed*, 177 Ill. 2d 389, 393 (1997). Section 11-501.2(a) provides that a chemical analysis is considered valid when it is performed according to the standards promulgated by the Department. Defendant's interpretation would eliminate that provision. Under defendant's interpretation, her breath-test result of 0.082 would have to be

presumed invalid, the opposite of what the legislature intended.  We cannot rewrite a statute. *People v. Davis*, 351 Ill. App. 3d 215, 218 (2004).  "The obvious legislative intent in enacting section 11-501(a)(1) was to impose a strict liability on drivers found to be impaired by an alcohol concentration of [0.08] or above."  *People v. Ziltz*, 98 Ill. 2d 38, 42 (1983).

¶ 18   We reiterate that defendant did not object to the breath-test result's admission into evidence.  If the evidence shows that the scientific procedures used gave an unreliable result, the court can exclude the evidence.  *Lipscomb*, 215 Ill. App. 3d at 432.  Otherwise, "[c]hallenges to the accuracy of the scientific process in question are properly held before the jury by cross-examination of prosecution witnesses and presentation of the defendant's own witnesses."  *Mehlberg*, 249 Ill. App. 3d at 539.  Here, the jury heard that the breath-test machine was subject to a 0.005 margin of error, and the jury also heard Bond's testimony and received the printouts of the readings showing the results of the accuracy tests and defendant's result.  The jury was properly instructed.  Consequently, the weight to be given the prosecution's evidence was for the jury to decide. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that defendant was guilty of driving with a BAC of 0.08 or more, based upon the reading taken from the breath-test machine.

¶ 19                                        III. CONCLUSION

¶ 20   For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 21   Affirmed.