THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALAN D. LOGSTON, Defendant-Appellant.

Fourth District    No. 4—89—0559

Opinion filed March 28, 1990.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Alan Logston, was tried by a jury in McLean County on two counts of home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12–11). He was acquitted on one count, convicted on the other count, and sentenced to 20 years' imprisonment. On appeal, defendant argues that after jury deliberations had begun, the trial court erred by (1) refusing to grant a mistrial when the jury indicated it was deadlocked, (2) inquiring into the numerical division of the jury, and (3) permitting the deliberating jurors to go home, with directions that they return the next day to the jury room to continue their deliberations. Defendant also argues that the trial court erred by refusing to tender a jury instruction on the offense of battery, by sentencing defendant to 20 years' imprisonment, and by indicating in the sentencing order that defendant was convicted on both counts of home invasion.

Count I alleged in part that defendant committed home invasion on December 2, 1988, by unlawfully entering the dwelling place in question and intentionally causing injury to a person therein. Count II alleged in part that defendant on the same day committed home invasion when he entered the same dwelling place and, while armed with a tire jack, used force or threatened the imminent use of force upon persons therein. The jury found defendant not guilty on count I and guilty on count II.

Defendant was jointly tried with his codefendant, Tony Logston. The codefendant was acquitted on both counts of home invasion.

### I. DEFENDANT'S ARGUMENTS THAT THE COURT INAPPROPRIATELY HANDLED THE DELIBERATING JURY

### A. THE COURT'S REFUSAL TO GRANT A MISTRIAL

Defendant contends that the trial court erred by refusing to grant a mistrial when the jury had indicated it was deadlocked. Defendant's

trial lasted less than three days. After nine hours of deliberations, the jury indicated it was deadlocked. The court conferred with counsel and decided to give the *Prim* instruction (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601) (Illinois Pattern Jury Instructions, Criminal, No. 28.01 (2d ed. Supp. 1987)) to the jury over defendant's objection. After an additional 2½ hours of deliberation, the jury was still unable to reach a unanimous verdict and was excused for the night. The following morning, after another 3½ hours of deliberations, the jury found defendant guilty on count II and not guilty on count I.

The trial court has broad discretion in determining whether a mistrial should be granted. (*People v. Hall* (1986), 114 Ill. 2d 376, 405, 499 N.E.2d 1335, 1346, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.) The court's judgment will not be disturbed unless this discretion is shown to be clearly abused, even though the jury had earlier indicated it was hopelessly deadlocked. (*People v. Daily* (1968), 41 Ill. 2d 116, 121-22, 242 N.E.2d 170, 173; *People v. Allen* (1977), 47 Ill. App. 3d 900, 905-06, 365 N.E.2d 460, 464.) There is no requirement that a mistrial be declared because of the jurors' inability to come to a unanimous verdict immediately. (*People v. Jones* (1987), 157 Ill. App. 3d 106, 114, 510 N.E.2d 116, 121.) Nor is a trial court required to accept a jury's assessment of its own ability to reach a verdict.

In *Allen*, the jury indicated that it was hopelessly deadlocked after deliberating for over six hours. It was sequestered overnight. The next day, after deliberating for several hours, the jury again announced it was hopelessly deadlocked. The judge then gave the *Prim* instruction, and the jury reached its verdict 1½ hours later. (*Allen*, 47 Ill. App. 3d at 903-04, 365 N.E.2d at 462-63.) No error was found.

A similar result was reached in *People v. Bravos* (1969), 114 Ill. App. 2d 298, 252 N.E.2d 776. In *Bravos*, the jury deliberated for eight hours before retiring for the night. The next morning, one hour after the deliberations began, the foreman announced that the jury was "completely deadlocked, eleven to one." The judge ordered the jury to continue deliberating and denied a defense motion for a mistrial. Six hours later, a guilty verdict was returned. The appellate court found no error in the court's refusal to discharge the jury and declare a mistrial. *Bravos*, 114 Ill. App. 2d at 311-15, 252 N.E.2d at 782-84.

The circumstances surrounding the jury deliberations in the present case are similar to those in *Bravos* and *Allen*. In accordance with those decisions, we find no abuse of discretion in the trial court's denial of defendant's motion for a mistrial.

### B. THE COURT'S FAILURE TO KEEP THE DELIBERATING JURY SEQUESTERED

■■ Defendant also claims that the trial court erred by sending the jurors home for the night instead of sequestering them. Section 115—4(*l*) of the Code of Criminal Procedure of 1963 provides the following:

> "(*l*) When the jury retires to consider its verdict an officer of the court shall be appointed to keep them together and to prevent conversation between the jurors and others ***." Ill. Rev. Stat. 1987, ch. 38, par. 115—4(*l*).

At 11:30 p.m., 2½ hours after the *Prim* instruction was given, the court conferred with counsel about the progress of the jury deliberations. The court noted that the jury had apparently been deliberating during those 2½ hours. Counsel agreed with the court to ask the jury whether it would be useful to recess and to return the next morning for further deliberations. After receiving the jury's response that a recess might be helpful, the court indicated it was prepared to let "the jury separate and come back tomorrow for further deliberations." The court then asked counsel if they had anything to say about that plan, and in response, defense counsel merely adhered to his earlier position that the jury had deliberated long enough and a mistrial should be declared. No objection was stated to the court's plan to let the jury separate overnight.

The trial court's failure to keep this deliberating jury sequestered was error and in violation of section 115—4(*l*) of the Code. However, this issue is waived when, as here, defendant fails to raise it at trial and to present evidence that the jurors were subjected to any improper influences during the period they were not sequestered. *People v. Jackson* (1982), 105 Ill. App. 3d 750, 758, 433 N.E.2d 1385, 1391.

### C. THE COURT'S INQUIRY INTO THE JURY'S NUMERICAL DIVISION

Defendant's next argument is that the trial court committed reversible error when it asked the jury how it was divided. To resolve this argument, the court's inquiries must be put in the context of all the interactions between the court and jury once the jury deliberations began.

Closing arguments and the court's instructions to the jury concluded around noon. The jury was sequestered, the jurors were given lunch, and they began their deliberations around 1:30 p.m.

Sometime that afternoon, during the course of the jury's deliberations, the jury requested a transcript of the testimony of one of the witnesses. The court conferred with counsel, who both suggested the

court deny the jury's request. The court decided nonetheless to have the court reporter read this testimony in open court to the jury with the court and counsel present.

Later that evening, it was brought to the attention of the court and counsel that, as the jury was going to dinner outside the courthouse, some unknown person drove by and yelled, "Find them not guilty or we will kill you." With the agreement of counsel, the court made a written inquiry to the jury, asking the jurors about any communication they may have had.

The jury was brought into open court. At that time, the court stated to the jury that the court had received a note from the jury just before the dinner recess, indicating that the jury had reached a verdict on two counts and was deadlocked on the other two counts. In open court, the jury foreman stated that this deadlock still existed.

The two verdicts which the jury had reached were then read in open court. Codefendant Tony Logston was found not guilty on both counts. After the court accepted these verdicts and entered judgment upon them, the court asked the foreman whether there was anything that occurred during the dinner recess that would affect or influence the deliberations of the jury. The foreman said there was not, and the rest of the jurors agreed.

The court then asked the foreman how many ballots had been taken on the two remaining counts. The foreman was unsure.

The court then stated the following:

> "THE COURT: Okay. Without indicating a direction—that is, I don't want to know if it is 8 guilty or 4 not guilty or 5 not guilty, 7 guilty, all I want is a number, I want the number that has been obtained as far as the balloting is concerned. It is 7/5, 8/4, 6/6, 11/1, whether the numerical count is on the balloting.
>
> [Foreman]: 10/2."

The court consulted with counsel out of the presence of the jury and informed counsel the court was going to ask the jury if it thought it could reach a verdict. Neither counsel had any objection nor did either make any remark about the court's previous inquiries.

After further discussion with the jury foreman and counsel, the court decided to give the *Prim* instruction and to direct the jury to continue its deliberations. Again, neither counsel addressed the court's inquiry into a numerical division.

Around 11:30 p.m., 2½ hours after the court gave the *Prim* instruction, the court again conferred with counsel. The court stated the following:

> "THE COURT: *** [I]t appears that deliberations have con-

tinued [during the last 2½ hours.] The court and counsel have discussed what should be done at this juncture in respect to the deliberations of the jury. I believe *the Court and counsel have agreed* that the following written inquiries should be made of the jury.

'Please advise if the vote is still ten to two. If not, what is the present count, how many additional ballots have been taken, and what was the count as to each? Do you feel it would be useful to recess for today and return tomorrow morning for further deliberations?'

Gentlemen, is that correct or is there anything you want to add or indicate at this point?

[Defense Counsel]: That is fine, Judge.

[Prosecutor]: Your Honor, I believe that is appropriate."

This note was taken to the jury, and its written response is as follows:

"The vote is nine to three. The two of the ten to two have not changed. Five ballots have been taken. We feel a recess may be helpful although we are not unanimous on this."

After the court indicated it was prepared to send the jurors home and have them return the next morning for further deliberations, defense counsel stated the following:

"Judge, I think that the fact that two that have not changed their vote in nearly three hours plus one more person has joined their side now, it appears to me that they are deadlocked, and I would ask that a mistrial be declared. I think they are hopelessly deadlocked. I don't think we should send them out overnight."

Defense counsel made no statement regarding the court's inquiry about the jury's numerical division.

The next day defendant was convicted. Again, there was no further reference to the numerical inquiry by the court. Defendant's post-trial motion also contains no reference to the numerical inquiry.

■ ■ The trial court's numerical inquiry of the jury was error. (*People v. Craddock* (1987), 163 Ill. App. 3d 1039, 516 N.E.2d 1357; *People v. Santiago* (1982), 108 Ill. App. 3d 787, 439 N.E.2d 984; *People v. Sanchez* (1981), 96 Ill. App. 3d 774, 442 N.E.2d 58; *People v. Green* (1980), 91 Ill. App. 3d 1085, 415 N.E.2d 595; *People v. Kirk* (1979), 76 Ill. App. 3d 459, 394 N.E.2d 1212; *People v. Duszkewycz* (1963), 27 Ill. 2d 257, 189 N.E.2d 299; *People v. Golub* (1929), 333 Ill. 554, 165 N.E. 196.) The question before us, however, is whether this action was reversible error. Based on this record, we hold it was not.

While it is error for a court to inquire into the numerical division of the jury, the error is harmless if it does not interfere with the verdict. (*Green*, 91 Ill. App. 3d at 1087, 415 N.E.2d at 597.) In *Craddock*, this court determined that the trial court's inquiry into the numerical division, but not which verdict the decision favored, was harmless. (*Craddock*, 163 Ill. App. 3d at 1045, 516 N.E.2d at 1362.) The trial court's inquiry as to the numerical division of the jury in the present case was similarly harmless. See also *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

## II. THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY ON BATTERY

■ Defendant also argues that the trial court erred by failing to give the jury instruction he tendered on the offense of battery. A defendant is entitled to an instruction on an included offense when all elements of that offense are included within the greater offense and there is some evidence which would support a conviction on the included offense. *People v. Dace* (1983), 114 Ill. App. 3d 908, 916, 449 N.E.2d 1031, 1036, *aff'd* (1984), 104 Ill. 2d 96, 470 N.E.2d 993.

Battery is an included offense of the first home invasion count against defendant, which alleged that defendant intentionally injured a person within the dwelling place in question. However, defendant was acquitted of this count. As a result, he cannot claim to have been prejudiced by the court's failure to tender this instruction.

■ Battery is not an included offense of home invasion as charged in count II of which defendant was found guilty. Count II alleges that defendant entered the dwelling place in question and, while armed with a tire jack, used force or threatened the imminent use of force upon persons within the dwelling. Since count II failed to allege the element of bodily harm or injury, the offense of battery is not an included offense of this charge of home invasion. (*People v. Pettit* (1983), 114 Ill. App. 3d 876, 884, 449 N.E.2d 1044, 1050.) Accordingly, defendant was not entitled to a jury instruction for battery as to count II.

## III. DEFENDANT'S 20-YEAR SENTENCE

■ Last, defendant challenges the length of his sentence and the correctness of the sentencing order. Specifically, defendant claims that the trial court abused its discretion by imposing a sentence of 20 years' imprisonment. Home invasion is a Class X felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(b)), which means it has a sentence range of 6 to 30 years' imprisonment (Ill. Rev. Stat. 1987, ch. 38, par.

1005—8—1(a)(3)). The determination and imposition of a sentence is a matter involving considerable judicial discretion. The standard of review to be applied in determining whether a sentence is excessive is whether the trial judge abused his discretion in imposing that sentence. *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541, 545.

Defendant's criminal record reveals a 10-year history of both felony and misdemeanor convictions. Among the offenses of which defendant has been convicted are burglary and criminal sexual abuse. The trial court did not abuse its discretion in sentencing defendant to 20 years in prison.

Regarding the sentencing order, the State concedes that order incorrectly represents that defendant was convicted of both counts of home invasion when in fact he was found guilty only of count II. Accordingly, we remand this matter to the trial court so that an amended sentencing order can be entered.

Affirmed and remanded with directions.

KNECHT, P.J., and SPITZ, J., concur.