_____No. 3–08–0403

_____

Filed December 4, 2009

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Putnam County, Illinois |
| Plaintiff-Appellee, | ) ) | No. 07-CF-21 |
| v. | ) ) | |
| JARED WILLMER, | ) ) | Honorable Kevin R. Galley, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the opinion of the court:

_____

After a jury trial, defendant, Jared Willmer, was convicted of aggravated criminal sexual abuse (720 ILCS 5/12–16(d) (West 2008)) and was sentenced to 4 years' probation and 120 days in the county jail. Defendant appeals his conviction, arguing that: (1) the trial court erred in denying his motion to declare a mistrial, which alleged that the jury was hopelessly deadlocked; and (2) the trial court erred in denying his posttrial motion for new trial, which alleged that the jury had improperly considered extraneous information in reaching a verdict. We affirm the trial court's denial of defendant's motion for mistrial and remand for the trial court to take the following actions: (1) to hold an evidentiary hearing to determine the specific nature of the extraneous information to which the jury was exposed during its deliberations; and (2) to reconsider this one aspect of defendant's posttrial motion for new trial based upon the evidence elicited at the evidentiary hearing.

FACTS

In August of 2007, defendant was charged with one count of aggravated criminal sexual abuse, a Class 2 felony. The charging instrument alleged that on June 1, 2007, defendant committed the offense by committing an act of sexual penetration with A.M.R., who was at least 13 years of age but less than 17 years of age when the act was committed, in that defendant put his penis in the vagina of A.M.R., and defendant was more than 5 years older than A.M.R.

The case proceeded to a jury trial in February of 2008. All of the evidence was presented in a single day. The undisputed evidence at trial established that on June 1, 2007, when defendant was 20 years old and A.M.R. was 15, defendant and A.M.R. had sexual intercourse at A.M.R.'s mother's residence. A.M.R.'s mother was not home at the time. The only disputed issue at trial pertained to the defense raised by defendant–that he reasonably believed that A.M.R. was of legal age at the time that the act was committed.[1] Conflicting evidence was presented on that issue from both sides. The State presented evidence that tended to indicate that defendant knew that A.M.R. was 15 when they had sexual intercourse. The defense presented evidence that tended to indicate that defendant did not know A.M.R.'s true age when they had sexual intercourse and that defendant believed A.M.R. to be 18. In all, six witnesses were presented, three for the state (A.M.R., A.M.R.'s mother, and the officer who took defendant's statement) and three for the defense (defendant, defendant's father, and defendant's mother). In addition, two of the State's earlier witnesses were recalled for brief rebuttal testimony after the defense had rested.

[1]There was a dispute as to whether the sexual intercourse was consensual or whether defendant had forced himself upon A.M.R. That issue, however, was not an element of the offense with which defendant was charged.

2

The jury began its deliberations in this case at 10:31 a.m. on February 27, 2008. At about 1:20 p.m., the jury sent the trial judge a note indicating that it was deadlocked and asking for transcripts of some of the witnesses' testimonies. The trial judge discussed the note with the attorneys and a response was decided upon. The trial judge directed the jury to continue deliberating and told it that he would not provide the jury with transcripts.

At about 3:01 p.m., the jury sent the trial judge a second note. The second note provided an update as to the jury's progress, apparently with tally results attached. No question was posed by the jury in the second note and the note did not contain the word "deadlock." The trial judge discussed the second note with the attorneys and listened to their respective positions regarding whether the court should respond to the second note. The State argued that a Prim instruction (People v. Prim, 53 Ill. 2d 62, 289 N.E.2d 601 (1972); Illinois Pattern Jury Instructions, Criminal, No. 26.07 (4th ed. 2000) (hereinafter IPI Criminal 4th)) should be given and asserted that the note was an indication that the jury was, in fact, deadlocked. Defendant objected to the giving of a Prim instruction and argued that the jury should simply be allowed to continue deliberating. The trial judge found that the second note was an indication that the jury had made further progress toward a verdict and elected, over defendant's objection, to give the jury a Prim instruction.

At about 4:14 p.m., the jury wrote the trial judge a third note stating that the jury was "hopelessly deadlocked" and that the jurors did not believe that they could come to a verdict. The trial judge discussed the third note with the attorneys and listened to their respective arguments as to the proper course of action for the court to take. The State asked the court to discharge the jury for the night and to instruct the jurors to return the following day for further deliberations. Defendant moved for a mistrial, based upon the jury deadlock. Defendant pointed out to the court that the jury

3

had been deliberating in the case for approximately six hours and noted concerns that existed regarding external communications if the jury were allowed to go home for the night. The trial judge denied defendant's motion for a mistrial and elected instead to discharge the jury for the evening. The trial judge told the jury to return for further deliberations at 9:30 the following morning. The trial judge instructed the jury pursuant to IPI Criminal 4th No. 26.09 regarding proper procedure for the jurors to follow upon ceasing their deliberations for the evening.

The jury returned the following morning and was directed by the trial judge to continue its deliberations. At 11:15 a.m. the jury returned a verdict, finding defendant guilty of aggravated criminal sexual abuse.

A presentence investigation report was ordered and the case was scheduled for a sentencing hearing. Prior to the sentencing hearing, defendant filed a posttrial motion for new trial. That motion was later amended. In the amended motion, defendant alleged, among other things, that the trial court erred in not granting his motion for a mistrial after the jury had indicated that it was hopelessly deadlocked and that a new trial was required because the jury had considered and based its verdict upon improper extraneous information. Attached to the motion, was the affidavit of one of the jurors, juror Baxter. In the affidavit, juror Baxter attested that after the jury was discharged for the night, he went home and asked his wife to find on the computer, the Illinois law "defining the [o]ffense" with which defendant had been charged. Baxter read that "section" on the computer and discussed that information with the jury the following day after it had resumed its deliberations. Baxter also attested that another juror brought copies of Bible verses into the jury room during the second day of deliberations and discussed those verses with the other jurors during their deliberations that day.

4

The trial judge heard arguments on the motion for new trial. The State argued for denial of the motion for various reasons. Defendant argued, among other things, that at the very least, the trial court should hold a hearing to determine whether the extraneous information tainted the jury's verdict. After hearing the arguments of the attorneys, the trial judge denied the motion for new trial. Specifically, as to the claim that the jury had improperly considered extraneous information, the trial judge found that defendant had failed to establish that he was substantially prejudiced by the jury's so doing.

After the motion for new trial was denied, a sentencing hearing was held. At the conclusion of the sentencing hearing, the trial court sentenced defendant to 4 years' probation and 120 days in the county jail. This appeal followed.

ANALYSIS

Defendant argues first on appeal that the trial court erred in denying his motion to declare a mistrial, which alleged that the jury was hopelessly deadlocked. Defendant asserts that the trial court committed an abuse of discretion, under the facts of this case, by denying the motion for mistrial and directing the jury to return for a second day of deliberations. Defendant notes that at that point, the jury had already deliberated for six hours, had been given the Prim instruction, and had indicated to the trial court three times that it was deadlocked, the last of which was an express indication that the jury was "hopelessly deadlocked." Defendant asserts further that under the present facts, there was a significant risk that the verdict resulted form the pressure inherent in the situation, that is, that the verdict was coerced or hastened by the trial court's conduct. See People v. Hudson, 171 Ill. App. 3d 1029, 1040, 526 N.E.2d 164, 170 (1987).

5

The State argues that the trial court's ruling did not constitute an abuse of discretion and should be affirmed. The State asserts that the trial judge properly found that the jury was moving closer to a verdict and allowed the jury to continue to deliberate to do so. The State asserts further that there is no indication in the record that the trial court's actions pressured the jury into a hastened verdict.

A trial court has broad discretion in ruling upon a motion for mistrial. People v. Logston, 196 Ill. App. 3d 30, 33, 552 N.E.2d 1266, 1268 (1990). "The court's judgment will not be disturbed unless this discretion is shown to be clearly abused, even though the jury had earlier indicated it was hopelessly deadlocked." Logston, 196 Ill. App. 3d at 33, 552 N.E.2d at 1268. The trial court is not required to accept a jury's assessment of its own ability to reach a verdict or to declare a mistrial merely because the jurors have not been able to come to a unanimous verdict immediately. Logston, 196 Ill. App. 3d at 33, 552 N.E.2d at 1268. "In determining how long a jury should be permitted to deliberate before a mistrial is declared and the jury is discharged, no fixed time can be prescribed, and great latitude must be accorded to the trial court in the exercise of its informed discretion." People v. Wolf, 178 Ill. App. 3d 1064, 1066, 534 N.E.2d 204, 205 (1989). There is no mechanical formula that can be applied because a trial court's ruling on a motion for mistrial is grounded in the unique facts of the particular case in which the ruling was made. See People v. Andrews, 364 Ill. App. 3d 253, 266, 845 N.E.2d 974, 986 (2006).

Having reviewed the record in the present case, we cannot say that the trial court committed an abuse of discretion in denying defendant's motion for mistrial. Although the jury had indicated repeatedly that it was deadlocked, the trial court found that the jury's second note had showed that the jury had made some progress in moving toward a verdict. While the case was not overly complex

6

and the evidence was presented in a single day, the charge alleged was a serious one and the jury's determination involved a very difficult assessment of which witnesses to believe and what inferences to draw from the evidence presented. Contrary to defendant's assertion on appeal, there is no indication in the record that jury's verdict was coerced or hastened by the trial court's ruling denying the motion for mistrial and directing the jury to return for a second day of deliberations.

As his next point of contention on appeal, defendant argues that the trial court erred in denying his motion for new trial, which alleged that the jury had based its verdict on prejudicial extraneous information. Defendant asserts that juror Baxter's affidavit was sufficient to satisfy defendant's burden to show prejudice, and that if it was not sufficient, that defense counsel was ineffective in failing to call Baxter and the other jurors to testify. Defendant asserts further that the trial court erroneously denied his request for an evidentiary hearing to determine if the jury's verdict was tainted and asks this court to remand this case for such a hearing to take place.

The State argues that the trial court's ruling was proper and should be affirmed. The State asserts that there is no evidence that the jury was prejudiced by any extraneous information that it may have heard, especially since the trial court instructed the jurors to base their decision only upon the evidence presented in this case. The State asserts further that since prejudice cannot be shown based upon this record, defendant's allegation of ineffective assistance of counsel must also fail.

A trial court's ruling on a motion for new trial will not be reversed on appeal absent an abuse of discretion. People v. Abdullah, 336 Ill. App. 3d 940, 949, 785 N.E.2d 863, 871 (2002). Illinois law is very restrictive as to the manner in which a jury verdict may be impeached. See People v. Hobley, 182 Ill. 2d 404, 457-58, 696 N.E.2d 313, 339 (1998); People v. Holmes, 69 Ill. 2d 507, 511-16, 372 N.E.2d 656, 658-60 (1978). A party may not admit a juror's testimony or affidavit to show

7

the motive, method, or process by which the jury reached its verdict. Hobley, 182 Ill. 2d at 457, 696 N.E.2d at 339. Such evidence may be admitted, however, to show that the jury was exposed to improper extraneous information. Hobley, 182 Ill. 2d at 457-58, 696 N.E.2d at 339.

Where a jury has been exposed to improper extraneous information, reversal of the jury's verdict is not automatic. See Holmes, 69 Ill. 2d at 518, 372 N.E.2d at 661; People v. Collins, 351 Ill. App. 3d 175, 179, 813 N.E.2d 285, 289 (2004). The party challenging the verdict must establish prejudice by showing that the information relates directly to something at issue in the case and that it may have influenced the verdict. Collins, 351 Ill. App. 3d at 179, 813 N.E.2d at 289. The burden then shifts to the nonmoving party to establish that the incident is harmless. Collins, 351 Ill. App. 3d at 179, 813 N.E.2d at 289. The verdict may stand only if it is obvious that the moving party was not prejudiced by the extraneous information. Collins, 351 Ill. App. 3d at 179-80, 813 N.E.2d at 289-90. The standard to be applied is whether the conduct at issue involved such a probability of resulting prejudice that the verdict must be deemed inherently lacking in due process. Hobley, 182 Ill. 2d at 458, 696 N.E.2d at 339; Collins, 351 Ill. App. 3d at 180, 813 N.E.2d at 290.

In the present case, defendant established that the jury had been exposed to some form of improper extraneous information. As the parties correctly note, however, based upon the record that is currently before this court, the true nature of that information cannot be clearly ascertained because the trial court denied defendant's request to hold an evidentiary hearing on the matter. Thus, the main question before this court as to this particular issue is whether the instant defendant had presented a sufficient showing to require the trial court to hold an evidentiary hearing, where the jurors would be questioned, to determine if the verdict had been tainted. We believe that the instant defendant made a sufficient showing to require an evidentiary hearing in this case.

8

Although not directly on point, we find the supreme court's analysis in <u>People v. Kuntu</u>, 188 Ill. 2d 157, 720 N.E.2d 1047 (1999), to be helpful in our decision here. In <u>Kuntu</u>, our supreme court, faced with a posttrial claim of juror partiality, stated that a posttrial evidentiary hearing was required in those circumstances if the defendant produced " 'specific, detailed and nonconjectural evidence in support of his position.' " <u>Kuntu</u>, 188 Ill. 2d at 161, 720 N.E.2d at 1049, quoting <u>People v. Towns</u>, 157 Ill. 2d 90, 102, 623 N.E.2d 269, 275 (1993). We find that the same rule would apply under the facts of the instant case.

In applying that rule here, we note that juror Baxter's affidavit provided specific, detailed and nonconjectural evidence in support of defendant's position that the jury's verdict had been tainted by the jury's exposure to extraneous prejudicial information. Thus, under the above rule, defendant provided sufficient evidence to require the trial court to conduct an evidentiary hearing. See <u>Kuntu</u>, 188 Ill. 2d at 161, 720 N.E.2d at 1049. We must conclude, therefore, that the trial court erred in denying defendant's request for an evidentiary hearing on the matter in the instant case. See <u>Kuntu</u>, 188 Ill. 2d at 161, 720 N.E.2d at 1049. Having reached that conclusion, we need not address defendant's alternative claim that defense counsel was ineffective in failing to call juror Baxter and the other jurors to testify at the hearing on the posttrial motion.

For the foregoing reasons, we affirm the trial court's denial of defendant's motion for mistrial and remand for the trial court to take the following actions: (1) to hold an evidentiary hearing to determine the specific nature of the extraneous information to which the jury was exposed during its deliberations; and (2) to reconsider this one aspect of defendant's posttrial motion for new trial based upon the evidence elicited at the evidentiary hearing. We reemphasize to all those involved that while jurors may be questioned as to the specific nature of the extraneous information to which they were

9

exposed, they may not be questioned about the effect of that information on their deliberations. See

Hobley, 182 Ill. 2d at 457, 696 N.E.2d at 339. Under the established law in this area, the effect of

that information on the jury's verdict may only be analyzed in an abstract sense as to whether the

conduct at issue involved such a probability of resulting prejudice that the verdict must be deemed

inherently lacking in due process. See Hobley, 182 Ill. 2d at 458, 696 N.E.2d at 339; Collins, 351

Ill. App. 3d at 180, 813 N.E.2d at 290.

Affirmed in part and remanded in part with directions.

LYTTON and WRIGHT J. J. concurring.