# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *People v. Hollahan*, 2019 IL App (3d) 150556

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH A. HOLLAHAN, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0556 |
| Filed | June 20, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 09-CF-630; the Hon. Susan S. Tungate, Judge, presiding. |
| Judgment | Reversed; cause remanded. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Santiago A. Durango, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, Lawrence M. Bauer, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justice McDade concurred in the judgment and opinion.<br>Justice Carter dissented, with opinion. |

**OPINION**

¶ 1    After a jury trial, the defendant was convicted of aggravated driving while under the influence of alcohol (aggravated DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(A) (West 2008)) and sentenced to a one-year term of imprisonment. He appeals his conviction, arguing that the trial court committed reversible error when, in response to the jury's request during deliberations to view the videotape of the defendant's field sobriety tests for a second time, the trial court had the jury watch the video in the courtroom while the court, the defendant, the attorneys for the defendant and the State, and two alternate jurors were present. The defendant also argues that the trial court improperly assessed a $500 public defender fee under section 113-3.1 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/113-3.1 (West 2008)) without conducting a hearing on the defendant's ability to pay, as required by the statute, and without giving the defendant proper notice and an opportunity to be heard on the issue.

¶ 2                                      FACTS

¶ 3    The defendant was charged by indictment with aggravated DUI, a Class 4 felony. The offense was alleged to have occurred in Kankakee on August 29, 2009. Private counsel entered an appearance for the defendant on January 19, 2010. However, on October 24, 2011, the trial court appointed a public defender to represent the defendant because the defendant claimed he had no money.

¶ 4    The defendant's first trial ended in a mistrial. His subsequent jury trial commenced on April 21, 2015. Illinois State Police Trooper Timothy Davis was the State's only witness. Davis testified that, at about midnight on August 29, 2009, he was in Kankakee traveling northbound on Washington Avenue near Hickory Street when he saw a vehicle ahead of him start to enter a left turn lane and then jerk back into its lane. The vehicle later stopped at a red light. At that time, Davis observed that the vehicle's rear license plate light was not operational and that the rear license plate had a plastic cover on it. When the stoplight turned green, the vehicle proceeded northbound, drove onto a double yellow line, then straddled a lane divider line, and then failed to yield to a fire truck that was traveling southbound with its emergency lights flashing.

¶ 5    At that time, Davis effected a traffic stop. Davis testified that the vehicle did not initially pull over even though there was a stretch along the street where the driver could have done so. After the vehicle stopped, Davis spoke to the defendant, who was the driver of the vehicle, and to a passenger who was in the front seat. When he spoke with the defendant, Davis detected a strong odor of an alcoholic beverage on the defendant's breath and noticed that the defendant had glassy, bloodshot eyes and slightly slurred speech. Davis testified that the defendant told him that he had drunk four beers.

¶ 6    Davis asked the defendant to perform three field sobriety tests: the horizontal gaze nystagmus test, the "walk and turn" test, and the "one leg stand" test. The defendant's performance of these tests were recorded on videotape. A redacted version of the recording was copied to a DVD and played to the jury during the defendant's trial without objection from the defendant. Based on his scoring of the defendant's performance on the three field sobriety tests and on his observations of the defendant's driving and conduct, Davis concluded that there was alcohol in the defendant's system and that the defendant was impaired. Davis

arrested the defendant for DUI. Davis stated that, after the defendant was taken to jail, he refused to take a Breathalyzer and became belligerent.

¶ 7    Following Davis's testimony, the State introduced an abstract of the defendant's driving record into evidence outside of the presence of the jury. The abstract showed numerous prior traffic violations by the defendant, including a suspension of the defendant's license in 1998 for DUI in violation of section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 1998)) and another conviction for the same offense in 2000.

¶ 8    The defendant testified that, shortly before he was pulled over by Davis on August 29, 2009, he jerked his car back from the left turn lane because he was giving his passenger a ride to an unfamiliar address and he realized that he was about to make a wrong turn. He stated that he did not yield to the fire truck because it had just "whipped" around the corner, giving the defendant no time to react. The defendant claimed that he pulled over right away when he saw the police lights. He stated that he refused to take the Breathalyzer test at the jail because he was already under arrest.

¶ 9    After closing arguments, the trial court instructed the jury on the applicable law. The court admonished the jurors that "[l]awyers, parties, and witnesses are not permitted to speak with you about any subject, even if unrelated to the case, until after the case is over and you are discharged from your duties as jurors." After the jury instructions, but prior to the start of the jury's deliberations, the trial court informed the jury that the bailiff could not discuss the case with the jurors, offer his opinion as to the facts or the law, or demonstrate the use of any exhibit, and he admonished the jurors not to ask the bailiff to do any of these things.

¶ 10    The jury then retired to deliberate. Shortly thereafter, the jury asked to watch the videotape of the defendant's traffic stop again. The trial court decided to show the video to the jury in the courtroom because the court did not have the "arrangement" necessary to allow the jury to view the video in the jury room. The court also decided to allow the defendant, the attorneys for the defendant and the State, and two alternate jurors to remain in the courtroom while the jury watched the video. The defendant's counsel did not object to this procedure. Before the jury was brought back into the courtroom, the trial court admonished the defendant, the attorneys, and the alternate jurors that the jury would be watching the video and that "[n]o one will have any conversation." After the jury was brought back into the courtroom, the trial court addressed the jurors, stating:

"Please come in and have a seat, we will not be talking to you other than to get the video, period. *** The jury has requested to see the video again. We do not have an arrangement to show it to you in your deliberation room. I have instructed everyone to not say a word and we will play the video for you. If you need to have the sound adjusted or anything that we can do, all right?"

¶ 11    After watching the video, the jury returned to the jury room to resume deliberations. Less than an hour later, the jury found the defendant guilty.

¶ 12    During the sentencing hearing, the State asked that the defendant be assessed a $500 public defender fee under section 113-3.1 of the Code of Criminal Procedure (725 ILCS 5/113-3.1 (West 2008)). The trial court imposed the fee requested by the State without conducting a hearing on the defendant's ability to pay such a fee. The trial court sentenced the defendant to a one-year term of imprisonment. The defendant filed a timely motion to reconsider his sentence, which the trial court denied.

¶ 13    This appeal followed.

¶ 14                                          ANALYSIS
¶ 15                        1. The Jury's Viewing of the Video During Deliberations
¶ 16    The defendant argues that the trial court committed reversible error when, in response to the jury's request during deliberations to see the video a second time, the trial court had the jury watch the video in the courtroom while the court, the defendant, the attorneys for the defendant and the State, and two alternate jurors were present.

¶ 17    Because the defendant did not object to the procedure employed by the trial court or raise the issue in a posttrial motion, he asks us to review the issue under the plain error doctrine. The State argues that plain error review is unavailable here because the defendant "acquiesced to" the procedure chosen by the trial court, thereby inviting any error resulting from that procedure and forfeiting appellate review of any such error. As the State correctly notes, where a party acquiesces in proceeding in a given manner, " 'he is not in a position to claim he was prejudiced thereby." *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001). However, plain error review is forfeited only if the defendant *invites* the error or *affirmatively agrees* to the procedure he later challenges on appeal. *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17.[1] Merely failing to object to a procedure proposed by the trial court or by the opposing party does not amount to invited error. *People v. Coan*, 2016 IL App (2d) 151036, ¶ 24 (rejecting the State's invited error argument where the State tendered the jury instruction at issue and the defendant failed to object); *People v. Harvey*, 211 Ill. 2d at 384-87 (rejecting the State's argument that one of the defendants invited error by failing to object to the use of certain evidence at trial). If the mere failure to object amounted to invited error, plain error review would never be available and the plain error rule would be rendered a nullity.

¶ 18    In this case, although defense counsel failed to object when the video was shown to the jury in the presence of the trial court, the parties and their counsel, and the alternate jurors, he did not request or expressly agree to that procedure. Accordingly, we may review the procedure employed by the trial court for plain error.

¶ 19    In addressing claims of error under the plain error doctrine, we employ a two-part analysis. The first step in the analysis is to determine whether a "plain error" occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). The word " 'plain' " here "is synonymous with 'clear' and is the equivalent of 'obvious.' " *Id.* at 565 n.2. If we determine that the trial court committed a clear or obvious (or "plain") error, we then proceed to a second step, which is to determine whether the error is reversible. Plain errors are reversible only when (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against

_____

[1]See also *People v. Harvey*, 211 Ill. 2d 368, 385 (2004); *People v. Carter*, 208 Ill. 2d 309, 319 (2003) ("Under the doctrine of invited error, an accused may not *request to proceed* in one manner and then later contend on appeal that the course of action was in error." (Emphasis added.)); *People v. Smith*, 406 Ill. App. 3d 879, 886-87 (2010) ("The purpose of the invited error doctrine is to prevent a defendant from unfairly receiving a second trial based on an error which *he injected* into the proceedings." (Emphasis added.)); *Villarreal*, 198 Ill. 2d at 227-28 (holding that the defendant could not attack verdict forms he submitted at trial on appeal); *People v. Patrick*, 233 Ill. 2d 62, 77 (2009) (holding that the defendant invited the alleged error by tendering the jury instruction he later challenged on appeal).

the defendant, regardless of the seriousness of the error," or (2) the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* at 565; *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005).

¶ 20    In this case, the trial court plainly erred by having the jury watch the video in the courtroom in the presence of the trial court, the prosecutor, the defendant, and defense counsel. It is a basic principle of our justice system that jury deliberations shall remain private and secret. *People v. Johnson*, 2015 IL App (3d) 130610, ¶ 17. The primary purpose of this rule is to protect the jurors from improper influence. *United States v. Olano*, 507 U.S. 725, 737-39 (1993); *Johnson*, 2015 IL App (3d) 130610, ¶ 17. Accordingly, although the trial court has the discretion to determine whether to grant a jury's request to review evidence and the manner in which such evidence may be viewed by the jury (*People v. McKinley*, 2017 IL App (3d) 140752, ¶ 16 (opinion of Carter, J.)), a trial court abuses its discretion if it allows the jury to review evidence in a manner that results in an improper influence upon the jury's deliberations (see *Olano*, 507 U.S. at 737-38; *McKinley*, 2017 IL App (3d) 140752, ¶ 16 (opinion of Carter, J.)). Courts review an improper intrusion upon jury deliberations for its prejudicial impact (*Johnson*, 2015 IL App (3d) 130610, ¶¶ 17-19) and will reverse only if the intrusion "affect[ed] the jury's deliberations and thereby its verdict" (*Olano*, 507 U.S. at 739). An improper intrusion upon jury deliberations by a third party is prejudicial when it impedes or inhibits the jurors' deliberations. See, *e.g.*, *id.* (noting that the presence of alternate jurors in the jury room during juror deliberations could prejudice the defendant if the presence of the alternates "exert[s] a 'chilling' effect" on the jurors or " 'operate[s] as a restraint upon the regular jurors' freedom of expression and action' ").

¶ 21    The presence of the trial court, the defendant, the prosecutor, and defense counsel during jury deliberations in this case clearly inhibited the jurors' deliberations and restrained their freedom of expression and action. As Justice McDade correctly noted in her dissent in *Johnson*, "it is hard to imagine a more intrusive, more chilling presence in the deliberations than the opposing parties—the defendant with his attorney and the State in the person of the State's Attorney—and the trial judge." *Johnson*, 2015 IL App (3d) 130610, ¶ 49 (McDade, P.J., dissenting). The state's attorney, the defendant, and the defendant's counsel each have a direct interest in the outcome of the litigation. Moreover, the trial court serves as an authoritative figure who presides over the litigation. The presence of these parties during jury deliberations is inherently intimidating to jurors and would almost certainly have inhibited their deliberations while the video was being played. It is extremely unlikely that any juror would have felt free to discuss the details of the video and its possible impact on his or her decision in the presence of these parties.    See *id.* ¶ 52 (noting that jurors would have felt inhibited from discussing a video played in the presence of the prosecutor, the defendant, and defense counsel for fear that any discussion of the video "may result in criticism or judgment from the[se] nonneutral parties and counsel"); see also *id.* ¶ 53 ("It is naïve *** to assume that a normal citizen/juror is not somewhat nervous when attempting to carry out [his or her] fact-finding function in the presence of the judge" during deliberations).

¶ 22    Any reasonable doubt on this question was removed by the trial court's statement to the jury in this case. After the jury was brought back into the courtroom to watch the video in the presence of the parties and their counsel, the judge made the following statement to the jury: "I have instructed everyone to not say a word and we will play the video for you. If you need

to have the sound adjusted or anything that we can do, all right?" This statement conveyed several things to the jury. First, it suggested that no one (including any juror) was to speak while the video was being played. Although the trial court did not explicitly bar the jurors from speaking, the court's statement to the jury created the impression that the video would be played in silence, and the court did not explicitly give the jurors permission to break that silence by discussing the video while it was being played. In addition, the trial court's statement informed the jurors that they would not have the ability to control the playing of the video. The trial court told the jury that "we will play the video for you" and suggested that "we" (not the jurors themselves) could adjust the sound if necessary. The court did not give the jurors the opportunity to pause the video or replay any parts they might have wanted to view or discuss in greater detail. This further inhibited the jury's deliberative process. In sum, the procedure employed by the trial court effectively precluded the jurors from engaging in any deliberations while the video was being shown and likely limited their ability to focus sufficiently on the particular portions of the video that gave them concern.

¶ 23        We acknowledge that our appellate court has declined to find reversible error under similar circumstances in three prior decisions. See, *e.g.*, *People v. Lewis*, 2019 IL App (4th) 150637-B, ¶¶ 97-100 (finding no error where the trial court allowed a 911 recording to be replayed for the jury in the courtroom in the presence of the parties during deliberations); *Johnson*, 2015 IL App (3d) 130610, ¶¶ 20-21 (finding no prejudicial error where the trial court refused to allow the jury to take a surveillance videotape into the jury room and instead had the jury review the video in the courtroom during deliberations in the presence of the judge, the defendant, the state's attorney, and defense counsel); *People v. Rouse*, 2014 IL App (1st) 121462, ¶¶ 78-79 (finding no error where the trial court allowed the jury to view surveillance footage in the presence of both parties and the trial judge during deliberations).[2] We find those decisions to be wrongly decided, and we decline to follow them. In finding no error in *Johnson* and *Rouse*, our appellate court relied principally upon the facts that (1) the third parties who were present when the video was replayed for the jury were instructed not to communicate with the jurors while the video was being played (*Johnson*, 2015 IL App (3d) 130610, ¶ 20), and they made no attempt to do so (*id.*; see also *Rouse*, 2014 IL App (1st) 121462, ¶ 79), and (2) after reviewing the video in the courtroom, the jurors returned to the jury room where they resumed private and unfettered deliberations (*Johnson*, 2015 IL App (3d) 130610, ¶ 20; *Rouse*, 2014 IL App (1st) 121462, ¶ 79). However, neither of those facts eliminated or mitigated the prejudicial impact upon deliberations that occurred *while the jurors were viewing the video.* In each case, the jurors had no opportunity to discuss the video as they were viewing it or to pause or replay any portions of the video that they found of particular importance. (Indeed, in *Rouse*, the trial court instructed the jury that they could not engage in any deliberations or have any discussions about what they were watching while the recording was played.) Accordingly, in each case,

_____

[2]In *McKinley*, a majority of the court found that the trial court erred by allowing the prosecutor, the defendant, defense counsel, and the bailiff to be present while the jury viewed a videotape during its deliberations. *McKinley*, 2017 IL App (3d) 140752, ¶¶ 32-36 (O'Brien, J., specially concurring); *id.* ¶¶ 38-44 (Holdridge, P.J., dissenting). However, the defendant failed to raise the issue before the trial court, and Justice O'Brien found that the trial court's error did not rise to the level of reversible plain error. *Id.* ¶ 36 (O'Brien, J., specially concurring). Justice Carter found no error (*id.* ¶¶ 22-23 (opinion of Carter, J.)) and no reversible plain error (*id.* ¶¶ 25-27). Accordingly, the majority affirmed the defendant's conviction in *McKinley*.

the procedure employed by the trial court directly impeded the jury's deliberations. The mere fact that the jury could have discussed the video later in the jury room is immaterial. In each case, the jury was prevented from controlling the video, from freely discussing it, and from debating any issues relating to the video while they were watching it.

¶ 24    Moreover, our appellate courts' decisions in *Lewis*, *Rouse*, and *Johnson* fail to acknowledge that the mere presence of the trial judge, the parties, and their attorneys during jury deliberations improperly intrudes upon the privacy of jury deliberations and has an inherently intimidating and inhibiting effect upon such deliberations. See *Johnson*, 2015 IL App (3d) 130610, ¶ 52 (McDade, P.J., dissenting); *McKinley*, 2017 IL App (3d) 140752, ¶¶ 32-35 (O'Brien, J., specially concurring). Such intrusions on the jurors' ability to freely discuss and debate the evidence should be deemed presumptively prejudicial. See *Olano*, 507 U.S. at 739 (acknowledging that "[t]here may be cases" where an intrusion upon jury deliberations by third parties "should be presumed prejudicial," and ruling that such intrusions are prejudicial when they "exert[ ] a 'chilling' effect" on the jurors or "operate as a restraint upon the regular jurors' freedom of expression and action." (Internal quotation marks omitted.)); see also *Johnson*, 2015 IL App (3d) 130610, ¶ 52 (McDade, P.J., dissenting).[3]

¶ 25    In *Johnson* and *Lewis*, our appellate court suggested that replaying a video or audio recording for the jury during deliberations in the presence of the parties, their counsel, and the trial court was not prejudicial error because the jury had already reviewed the recording under identical circumstances during the trial. *Johnson*, 2015 IL App (3d) 130610, ¶ 20 (majority opinion); *Lewis*, 2019 IL App (4th) 150637-B, ¶ 98. In *Lewis*, our appellate court went so far as to state that "[w]hen a deliberating jury returns to the courtroom and, in the presence of the judge, the parties, the lawyers, and court personnel listens again, in silence, to an audio recording, *the jury does nothing different from what it did before, when the recording originally was played*." (Emphasis added.) *Lewis*, 2019 IL App (4th) 150637-B, ¶ 98. However, a jury's viewing of a video recording during trial is critically different from its viewing of that same recording *during deliberations*. Unlike public trials, jury deliberations must occur in privacy and secrecy. *Johnson*, 2015 IL App (3d) 130610, ¶ 17. Once deliberations begin, the jurors must be shielded from any outside influences that improperly impede or inhibit their deliberations. *Olano*, 507 U.S. at 737-38; *Johnson*, 2015 IL App (3d) 130610, ¶ 17. If a trial court fails to protect the jurors from such influences (as in this case), it commits reversible error. See *Olano*, 507 U.S. at 738; *Johnson*, 2015 IL App (3d) 130610, ¶¶ 17-19.

¶ 26    Our appellate court has also suggested that the trial court's authority to allow a deliberating jury to review audio or video evidence in the presence of the parties, their attorneys, and the

---

[3]In *Olano*, the United States Supreme Court declined to presume prejudice where two alternate jurors were present throughout the jury's deliberations but there was no showing that the alternate jurors either participated in or "chilled" the jury's deliberations. *Olano*, 507 U.S. at 739. However, *Olano* is distinguishable. The alternate jurors in *Olano* were neutral, disinterested parties who were "indistinguishable from the 12 regular jurors" until the close of trial. *Id.* at 740. The third parties who were present during the jury deliberations in this case were very different. The parties and their counsel had a direct interest in the outcome of the case, and the trial court was an authoritative, intimidating figure who was not a finder of fact and did not share the same standing as the jurors. See *Johnson*, 2015 IL App (3d) 130610, ¶ 50 (McDade, P.J., dissenting). Accordingly, the argument for presuming prejudice in this case is far more compelling than it was in *Olano*.

trial judge flows directly from the trial court's discretion to manage its courtroom. *McKinley*, 2017 IL App (3d) 140752, ¶ 22 (opinion of Carter, J.) ("the mode and manner in which a circuit court allows a jury to review a piece of evidence *** [such as a video recording] falls directly within the scope of the court's inherent authority to manage its courtroom"); see also *Lewis*, 2019 IL App (4th) 150637-B, ¶ 99. We disagree. Although a trial court generally has discretion to determine whether to grant a jury's request to review evidence and the mode and manner in which such evidence may be viewed by the jury, the court abuses its discretion and commits reversible error if it allows the jury to review evidence in a manner that improperly inhibits the jury's deliberations. *Olano*, 507 U.S. at 739; see also *McKinley*, 2017 IL App (3d) 140752, ¶ 41 (Holdridge, J., dissenting); see generally *id.* ¶ 16 (opinion of Carter, J.).

¶ 27    In *Lewis*, our appellate court also ruled that "[a]llowing a deliberating jury to listen to a recording again in the courtroom instead of in the jury room avoids problems with equipment and the skills necessary to operate the equipment [citation] and also minimizes the risk of breakage or erasure of the recording." (Internal quotation marks omitted.) *Lewis*, 2019 IL App (4th) 150637-B, ¶ 97. For this reason, among the other reasons discussed above, the *Lewis* court ruled categorically that allowing the jury to hear a recording again in the courtroom during deliberations in the presence of the parties, their counsel, and the trial judge is not prejudicial error (provided that the jury has been instructed not to deliberate during the playing of the recording and the third parties are instructed not to communicate with the jurors or otherwise influence them). *Id.* ("we now reject outright the argument that this procedure is *** erroneous, let alone structurally erroneous"); see also *id.* ¶ 99 ("we conclude that if a jury, during its deliberations, requests to see or hear a recording again, the trial court need not send the recording and equipment into the jury room but instead may, in its discretion, have the jury brought back into the courtroom for a replaying of the recording"). The *Lewis* court further ruled that, "if the court chooses to have the recording replayed in the courtroom, the court, parties, and counsel must be present to view or hear the evidence, and the court should instruct the jury not to discuss the evidence while in the courtroom." *Id.* We find these rulings in *Lewis* to be both erroneous and troubling. As an initial matter, we find it difficult to believe that, with all of the digital and other "user-friendly" technology currently available (such as laptop computers and tablets, to name only a few), a trial court cannot arrange for the jury to view video or audio evidence in the jury room without risking the destruction of evidence or other technical difficulties. The fact that this problem recurs so often in this State is inexplicable. In our view, if a trial court decides to grant a jury's request to review audio or video evidence during deliberations, the only acceptable practice is to arrange for the jury to view the evidence at issue in private, preferably by bringing a laptop, tablet, or some similar device into the jury room. The *Lewis* court's ruling will make that less likely to occur.

¶ 28    But even if, for some reason, a video or audio recording must be played for a deliberating jury in the courtroom, the jury should view the video in private, not in the presence of the parties, their attorneys, or the trial judge. In ruling otherwise, the *Lewis* court appeared to assume that anything that occurs in the courtroom, even jury deliberations, is a "court proceeding" requiring the presence of the judge and the parties. See *id.* We disagree. As noted above, jury deliberations must be conducted privately and in secret so as to insulate the jury from improper influence. *Olano*, 507 U.S. at 737-38. The parties have no right to be present for such deliberations, regardless of where they occur. The mere fact that a portion of jury deliberations occurs in the courtroom does not transform those deliberations into a public trial

proceeding. See generally *People v. Gore*, 2018 IL App (3d) 150627, ¶¶ 33-35 (ruling that a criminal defendant's right to a public trial does not apply to a portion of the proceedings wherein the trial court answers questions posed by the jury during deliberations); see also *State v. Magnano*, 326 P.3d 845, 851 (Wash. Ct. App. 2014) (trial court did not violate the defendant's public trial right when it closed the courtroom while a 911 recording was replayed to the jury during jury deliberations in order to protect the secrecy of the jury's deliberations). Nor does it entitle the defendant or any other third party to be present during those deliberations. The defendant has the right to be present and to participate in any communication between the trial judge and the jury that occurs after deliberations have begun. *People v. Coleman*, 391 Ill. App. 3d 963 (2009). This includes the right to be present for any arguments as to whether the trial court should grant a deliberating jury's request to review video or audio evidence. However, once a trial court decides to grant the jury's request, the jury should be allowed to view any such evidence in private because the viewing constitutes a part of the jury's deliberations. The defendant has no right to be present at that time.

¶ 29    Moreover, we find that the procedure employed by the trial court in this case amounted to structural error and is therefore reversible under the plain error doctrine. A structural error is "a systemic error," which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010). "An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Id.* at 609; see also *People v. Henderson*, 2017 IL App (3d) 150550, ¶ 47; *People v. Matthews*, 2017 IL App (4th) 150911, ¶ 43. As noted above, the presence of the parties, their attorneys, and trial judge during jury deliberations was inherently intimidating and necessarily impeded or inhibited the jurors' free discussion and deliberation as the video was being shown to them. This inhibiting effect upon the jurors' deliberations was exacerbated by the trial court's assertion of control over the playing of the video and by its statement to the jury, which suggested that the jurors were not free to talk as the video was being played. Anything that intrudes upon the privacy of jury deliberations and impedes or inhibits the jurors' freedom of expression and action during deliberations in this manner renders the trial an unreliable means of determining guilt or innocence. We decline to follow prior decisions of our appellate court that hold or suggest otherwise.[4]

¶ 30    The dissent correctly notes that an intrusion into a jury's deliberations constitutes reversible error only if the defendant is prejudiced by the intrusion. *Infra* ¶¶ 39-40. However, the dissent assumes that a defendant may establish such prejudice under the circumstances presented in this case only by showing either that (1) one of the nonjurors that was present during the jury's deliberations "engaged in a prejudicial communication with [a] juror about a matter pending before the jury" or that (2) "improper extraneous information reached the jury." *Infra* ¶ 41. We disagree. As shown above, the mere presence of the trial judge, the parties, and their attorneys during jury deliberations improperly intrudes upon the privacy of jury deliberations and has an

---

[4]In finding no structural error under circumstances similar to those presented here, our appellate court cited *Thompson* for the proposition that structural errors have been found "only in a limited class of cases" and suggested that only the six types of errors expressly referenced in *Thompson* may be considered structural. *Matthews*, 2017 IL App (4th) 150911, ¶¶ 43-44. However, in *People v. Clark*, 2016 IL 118845, ¶ 46, our supreme court noted that it has not restricted structural plain error in this manner. See also *People v. Sanders*, 2016 IL App (3d) 130511, ¶¶ 16-17.

inherently intimidating and inhibiting effect upon such deliberations. Such intrusions on the jurors' ability to freely discuss and debate the evidence should be deemed presumptively prejudicial (see *Olano*, 507 U.S. at 739), regardless of whether they involve any express communications or the transmission of "extraneous information." Moreover, the prejudice created by the presence of the trial judge, the parties, and their attorneys during jury deliberations was compounded in this case by the trial judge's comments to the jurors and the procedure subsequently employed by the court, both of which effectively denied the jury the ability to control the video, to comment on any portion of the video, or to deliberate about what they were watching as the video was being shown. This impeded the jury's deliberations on a matter of obvious concern to the jury, thereby prejudicing the defendant. Accordingly, the trial court committed reversible error.

¶ 31                                      2. The Public Defender Fee

¶ 32      The defendant also argues that the trial court erred by assessing a $500 public defender fee under section 113-3.1 of the Code of Criminal Procedure (725 ILCS 5/113-3.1 (West 2008)) without conducting a hearing on the defendant's ability to pay that fee, as required by the statute, and without providing him with adequate notice that it planned to assess such a fee. The defendant contends that, if this court affirms his conviction, it should vacate the public defender fee outright. The State confesses error on this issue but argues that we should remand for a hearing on the defendant's ability to pay the public defender fee rather than vacate the fee outright. Because we are reversing defendant's conviction and remanding for a new trial, we need not address whether the public defender fee imposed as a part of defendant's sentence should be vacated, with or without a hearing on remand.

¶ 33                                          CONCLUSION

¶ 34      For the reasons set forth above, we reverse the judgment of the circuit court of Kankakee County and remand for a new trial.

¶ 35      Reversed; cause remanded.

¶ 36      JUSTICE CARTER, dissenting:

¶ 37      I respectfully dissent from the ruling and analysis expressed in the majority opinion in the present case. I would find that defendant has failed to establish that either error or plain error occurred here. See *People v. McLaurin*, 235 Ill. 2d 478, 497 (2009) ("[T]he key question in determining whether an 'intrusion' into the jury room constitutes error is whether the defendant was prejudiced by the intrusion."); *Johnson*, 2015 IL App (3d) 130610, ¶ 19 ("[W]e review outside jury intrusions for prejudicial impact.").

¶ 38      The issue of whether evidentiary items should be taken to jury room during deliberations is a matter within the discretion of the trial court, and the trial court's decision on the matter is not reversed absent an abuse of discretion to the prejudice of the defendant. *People v. Williams*, 97 Ill. 2d 252, 292 (1983). Similarly, the mode and manner in which a trial court allows a jury to review a piece of evidence during jury deliberations falls within the scope of the court's inherent authority to manage its courtroom and is a matter of the court's discretion. *McKinley*, 2017 IL App (3d) 140752, ¶ 22 (opinion of Carter, J.); see also *Lewis*, 2019 IL App (4th)

150637-B, ¶ 97 (holding that where a deliberating jury requests to have an audio or video recording played again, the trial court has discretion to either send the evidence to the jury room or bring the jury into the courtroom to play the recording); *Rouse*, 2014 IL App (1st) 121462, ¶ 78 (holding that it was within the trial court's discretion to allow the jury to view a video recording in the presence of both parties and the judge).

¶ 39 Here, defendant essentially argues that the mode and manner in which the trial court allowed the jury to view the video constituted error because the presence of the judge, the attorneys, the defendant, and the two alternate jurors had a chilling effect on jury deliberations. Defendant's claim that the jury was exposed to improper information or influence is comparable to the body of law regarding impeachment of a jury verdict. A jury verdict may not be impeached by an affidavit or testimony from a juror regarding the motive, method, or process by which the jury reached its verdict. See, *e.g.*, *People v. Hobley*, 182 Ill. 2d 404, 457 (1998). However, a jury verdict may be impeached based on evidence of improper extraneous influences on the jury. *Id.* at 458. Where a defendant seeks to impeach a jury verdict based on an outside influence or communication, reversal is not warranted unless the defendant was prejudiced. See *id.*; *People v. Harris*, 123 Ill. 2d 113, 132 (1988); *People v. Holmes*, 69 Ill. 2d 507, 514-19 (1978); *People v. Willmer*, 396 Ill. App. 3d 175, 181 (2009); *People v. Collins*, 351 Ill. App. 3d 175, 179 (2004); see also *People v. Kuntu*, 188 Ill. 2d 157, 161-62 (1999) (holding that a letter sent from a juror to a state's attorney after the trial indicating that the juror had a personal relationship with the state's attorney was not conclusive evidence that the defendant's right to a fair trial had been prejudiced); *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966) (*per curiam*) (holding that reversal was warranted where a bailiff told jurors that the defendant was guilty because the bailiff's statements were prejudicial and violated the defendant's constitutional rights).

¶ 40 Generally, a rebuttable presumption of prejudice arises when a defendant shows that a third party has communicated with a juror about a matter pending before the jury or that the jury has been exposed to improper extraneous information that relates directly to something at issue in the case that may have influenced the verdict. *Harris*, 123 Ill. 2d at 132; *Collins*, 351 Ill. App. 3d at 179-80; *Willmer*, 396 Ill. App. 3d at 181. While allegations of prejudicial outside influences are sufficient to raise a presumption of prejudice and shift the burden to the State, allegations that a juror "may have been exposed to extraneous information of an unknown nature" are not sufficient to raise a presumption of prejudice. *People v. Williams*, 209 Ill. 2d 227, 242 (2004). When a defendant has made a showing sufficient to raise a presumption of prejudice, the State may rebut the presumption by showing that the improper communication or extraneous information was harmless. *Harris*, 123 Ill. 2d at 132; *Hobley*, 182 Ill. 2d at 462; *Collins*, 351 Ill. App. 3d at 179-80. However, when the issue is unpreserved—as in the instant case—the burden of establishing prejudice remains on the defendant and does not shift to the State. *McLaurin*, 235 Ill. 2d at 497-98; see also *Olano*, 507 U.S. at 740-41.

¶ 41 Applying the above principles to the instant case, the defendant has not shown that either the trial judge, the attorneys, the defendant, or the alternate jurors engaged in a prejudicial communication with any juror about a matter pending before the jury or that improper extraneous information reached the jury. At most, defendant has shown that the procedure the court employed to play the video during jury deliberations created a situation where it was possible for one of those persons to have an improper communication with the jury. The mere possibility of an improper communication, however, is insufficient to show that defendant was

prejudiced. As such, I would find that defendant has not shown that the court abused its discretion by using the procedure, which it followed in the present case. With all due respect, I believe the majority's position on this issue is a radical departure from the traditional way reviewing courts have treated questions involving the integrity of jury deliberations.

¶ 42 I recognize that I concurred in the judgment and opinion in *Henderson*, 2017 IL App (3d) 150550, ¶ 46, in which we held that error occurred where the trial court allowed the jury to review evidence in the presence of an employee of the state's attorney's office and a court bailiff. Upon further consideration of this issue, I do not believe that the presence of the employee of the state's attorney's office and the bailiff, without more, showed that defendant was prejudiced. However, I would still find that error occurred in *Henderson* because the trial court failed to consult the parties regarding the jury's request to review the evidence or the mode and manner in which the court would allow the evidence to be reviewed.